# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN C. and THERESA C., Individually  :
and as Parents and Natural Guardians of  :
B.C.                                     :
                                         :
      Plaintiffs                      :
                                         :
vs                                       :      CIVIL ACTION - LAW
                                         :      JURY TRIAL DEMANDED
FOUNDATIONS BEHAVIORAL HEALTH:
a/k/a UHS OF DOYLESTOWN, LLC;            :
UHS OF DELAWARE, INC.;                   :
UNIVERSAL HEALTH SERVICES, INC.; :      JURY TRIAL DEMANDED
GINA M. FUSCO, PSY.D.;                   :
MOHAMMEDYUSUF MODAN, M.D.;               :
JON LYFORD; ANTHONY CUSATE;              :
WENDY MONTE; DANA BACHMAN;               :
DONNA NEWTON-PUTIGNANO;                  :
AMY DOLLINGER; TIM (LAST NAME            :
UNKNOWN); BERNARD OTABIL;                :
and UNKNOWN EMPLOYEES                    :
                                         :
      Defendants                      :

## COMPLAINT

## I.    PRELIMINARY STATEMENT

1.    This action is brought by Kevin C. and Theresa C., Individually and as Parents and Natural Guardians of B.C. (collectively referred to as "Plaintiffs"), against the named defendants under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), and their federal and state implementing regulations, and

Pennsylvania tort law.

2.      B.C. is a young man with severe Autism Spectrum Disorder ("ASD") who was devastatingly abused, injured and traumatized while entrusted to the full-time care and supervision of a Pennsylvania psychiatric facility run by Defendant Universal Health Services ("UHS") of Delaware, locally known as UHS of Doylestown, Pennsylvania, LLC, doing business as Foundations Behavioral Health ("FBH") in Doylestown.

## II.   **PARTIES**

3.      The Plaintiff, Kevin C., is an adult and competent individual who resides at 3 Tania Court, Succasunna, New Jersey, and is the father and natural guardian of the Plaintiff, B.C.

4.      The Plaintiff, Theresa C., is an adult and competent individual who resides at 3 Tania Court, Succasunna, New Jersey, and is the mother and natural guardian of the Plaintiff, B.C.

5.      B.C. is an adult, incompetent individual who resides with his parents at 3 Tania Court, Succasunna, New Jersey.

6.      Defendant Universal Health Services ("UHS") is a Delaware corporation that owns and manages healthcare facilities nationwide.   Its management branch is Defendant UHS of Delaware.   The address for both is Universal Corporate Center, Post Office Box Number 61558, 367 South Gulph

Road, King of Prussia, PA 19406.

7.     The address of Defendants UHS of Doylestown, LLC, and FBH, is 833 East Butler Avenue, Doylestown, PA 18901.  Upon information and belief, Defendant FBH ("FBH") has no separate corporate existence from UHS but, is merely a component or subsidiary of UHS.

8.     At all times relevant to this Complaint, Gina M. Fusco, Psy.D., is or was the Chief Executive Officer of FBH.  Upon information and belief, she was responsible for the policy, practice, supervision, implementation, and conduct of all FBH matters; the care, custody, and safety of all individuals residing in FBH, including B.C., and for the hiring, training, supervision, discipline, retention, reporting, staffing, and conduct of all FBH personnel.

9.     At all times relevant to this Complaint, Jon Lyford is or was the Director of Admissions at FBH.  Upon information and belief, he was responsible for ensuring that only patients capable of being treated safely and appropriately would be admitted to FBH.

10.     At all times relevant to this Complaint, Anthony Cusate was or is the Director of Inpatient Services at FBH. On information and belief, he was responsible for the care, custody, and safety of all individuals residing in FBH, including B.C.

11.     At all times relevant to this Complaint, Mohammedyusuf Modan,

M.D., is or was a psychiatrist at FBH and was B.C.'s doctor at FBH. Upon information and belief, he was responsible for B.C.'s care, custody, and safety.

12.     At all times relevant to this Complaint, Wendy Monte, M.S., L.P.C., B.S.L. is or was a supervisor at FBH and was B.C.'s case manager at FBH. Upon information and belief, she was responsible for B.C.'s care, custody, and safety.

13.     At all times relevant to this Complaint, Donna Newton-Putignano, M.S., B.C.B.A., is or was the Senior Director of Behavioral Services at FBH and cared for B.C. at FBH.   Upon information and belief, she was responsible for B.C.'s care, custody, and safety.

14.     At all times relevant to this Complaint, Dana Bachman, R.N. is or was the Assistant Director of Nursing at FBH and cared for B.C. at FBH.  Upon information and belief, she was responsible for B.C.'s care, custody, and safety.

15.     At all times relevant to this Complaint, Amy Dollinger is or was the Director of Compliance (Personal Injury and Risk Management) at FBH and cared for B.C. at FBH.  Upon information and belief, she was responsible for B.C.'s care, custody, and safety.

16.     At all times relevant to this Complaint, Bernard Otabil is or was an employee at FBH and cared for B.C. at FBH.

17.     At all times relevant to this Complaint, Tim LNU (last name unknown) is or was an employee at FBH and cared for B.C. at FBH.

18.     At all times relevant to this Complaint, the other unknown Defendants were employees at FBH and cared for B.C. at FBH.

19.     At all relevant times, all individual Defendants were acting within the scope of and in furtherance of their employment.

20.     FBH, UHS, and all named Defendants were responsible for the safe operation of FBH, in which B.C. resided, including providing a program of services, care and supervision that was and is supposed to protect the residents of the facility and protect and promote the physical and mental well-being of its residents, including B.C.

## III.   JURISDICTION AND VENUE

21.     This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case raises federal questions under federal law. The Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' federal claims over which the Court has original jurisdiction that the federal and state claims form part of same case or controversy under Article III of the United States Constitution.

22.     This Court also has jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, and Plaintiffs are citizens of

New Jersey, while UHS is a Delaware corporation headquartered in Pennsylvania and FBH, a.k.a. UHS of Doylestown, is a Pennsylvania corporation.

23.     Plaintiffs' claims and remedies are authorized by 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

24.     All of the Defendants' actions complained of herein have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

## IV.   **FACTUAL BACKGROUND**

25.     On January 5, 2019, at Plaintiffs' home, B.C. was acting aggressively towards his parents, younger brother and their family pet.

26.     As a result of the aggressive actions of B.C., Plaintiffs were concerned that he would harm himself or others.

27.     As a result of the aggressive actions of B.C., it was determined that he needed medical care and treatment.

28.     On January 5, 2019, B.C. was placed in St. Claire's Hospital emergency room.

29.     While at the emergency room at St. Claire's Hospital, B.C. was placed in four-points restraints.

30.     Thereafter, B.C. was transferred from the emergency room into the St. Claire's Crisis Unit.  While in the crisis unit, B.C. was calmed and Plaintiffs were able to bathe him on January 7, 2019.

31.     During the time that the Plaintiffs were able to bathe their son on January 7, 2019, they did not take notice of any traumatic bruising about his body. Plaintiffs did note that B.C. had bruises on his wrists from restraints and on his thigh from what they believed were caused interactions with their family dog.

32.     On January 7, 2019, after Plaintiffs were able to bathe their son, B.C. was transferred to the Defendant, FBH.

33.     B.C. was treated on an in-patient basis at FBH from January 7, 2019 until January 13, 2019.

34.     On January 13, 2019, B.C. was transferred from FBH to Doylestown Hospital and then he was transferred to CHOP-Philadelphia Hospital.

35.     During his in-patient hospitalization at FBH, the Defendant, Bernard Otabil, was employed by FBH as a mental health technician.

36.     In his capacity as a mental health technician, the Defendant, Bernard Otabil, was to provide care, comfort, and treatment to B.C. while he was an in-patient at Defendant, FBH.

37.     During his in-patient hospitalization at FBH, B.C. was treated violently by the Defendant, Bernard Otabil, who pushed B.C. to the floor multiple

times and struck him multiple times.

38.     Defendant, FBH, was in possession of videotaped evidence of the Defendant, Bernard Otabil, pushing, shoving, striking and otherwise abusing B.C. during his in-patient hospitalization at FBH.

39.     Upon information and belief, the Defendant, FBH, did not monitor its camera system which would have revealed the abuse perpetrated upon B.C. by Bernard Otabil.

40.     In fact, the Defendant, FBH, did not review its camera system for videotaped evidence of the abuse perpetrated upon B.C. by Bernard Otabil until the Defendant, FBH was investigated for criminal activity as a result of the injuries suffered by B.C.

41.     On January 13, 2019 during treatment of B.C., staff at FBH, while showering B.C., noticed a "red rash" around his genital area.  As a result, they sent him to Doylestown Hospital.  From Doylestown Hospital, B.C. was transferred to CHOP-Philadelphia Hospital as referenced above.

42.     At CHOP-Philadelphia Hospital, the Plaintiff, B.C., was treated by Dr. Brian Brennan.

43.     At CHOP-Philadelphia Hospital, Dr. Brennan diagnosed B.C. as suffering from a lacerated spleen and a dorsal penile vein rupture.

44.     Dr. Brennan advised that the injuries sustained by B.C. were caused by blunt force trauma to the abdominal cavity.

45.     Additionally, Dr. Brennan ruled out the fact that the injuries suffered by B.C. could have been self-inflicted.

46.     Further, Dr. Brennan opined that the injuries sustained by B.C. as he diagnosed were suffered during the time of his treatment of B.C. at FBH.

47.     B.C. has been diagnosed with autism and, as a result, is a non-verbal individual who was devastatingly abused, injured and traumatized while entrusted to the full-time care and supervision of a Pennsylvania psychiatric facility run by Defendant Universal Health Services ("UHS") of Delaware, locally known as UHS of Doylestown, Pennsylvania, LLC, doing business as Foundations Behavioral Health ("FBH") in Doylestown.

48.     FBH employees, who were B.C.'s constant caretakers, caused B.C.'s injuries through abuse, or through extreme and reckless lack of care.

49.     FBH's actions, and the actions of all the named Defendants, were negligent, reckless, intentional and/or deliberately indifferent.  All Defendants are liable for the damages and expenses incurred by B.C., and that will continue to be incurred by B.C., under federal and state law.

50.     As alleged above, at all times material and relevant hereto, the Defendant, Bernard Otabil, was acting in the course and scope of his authority consistent with his employment with the Defendant, FBH.

51.     At all times material and relevant hereto, the Defendant, Bernard Otabil, was acting to further the business interests of the Defendant, FBH.

52.     FBH and UHS have been repeatedly cited and sued for insufficient staffing, training, and various incidents of abuse, both locally and across the nation, that bear striking similarity to B.C.'s. See http://uhsbehindcloseddoors.org/.

## V.     CLAIMS ASSERTED

### COUNT I

### NEGLIGENCE, GROSS NEGLIGENCE AND RECKLESSNESS
### PLAINTIFFS vs. FBH and UHS

53.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs in this Complaint.

54.     At all times relevant to this Complaint, FBH and UHS had a duty under Pennsylvania law and federal and state statutes and regulations to appropriately supervise, educate, habilitate, and treat B.C.; to ensure that his program was safe, appropriate, properly staffed and supervised by appropriately

trained individuals, and free from unreasonable and foreseeable risks of harm; to hire, train, supervise, discipline, staff, and retain employees that could provide safe, secure, and adequate supervision of B.C.; and to refrain from taking unreasonable actions that would cause damages to B.C..

55.     At all times relevant to this Complaint, Defendants FBH and UHS breached their duty to adequately hire, train, supervise, and discipline its staff and its program.

56.     At all times relevant to this Complaint, Defendants FBH and UHS breached their duty to provide B.C. a safe, secure, and adequately staffed treatment program with reasonable care for the heightened needs of its clients, including B.C.

57.     The Defendants owed B.C. a duty of care to prevent the conduct alleged, because, under the same or similar circumstances, a reasonable, prudent and careful person should have anticipated that injury to B.C. or to those in a like situation would likely result from the foregoing conduct.

58.     Upon information and belief, employees of FBH, were inadequately trained and supervised, and were unfit and incompetent for their positions.

59.     Upon information and belief, Defendants knew or should have known through the exercise of reasonable diligence that the level and quality of

staffing provided for B.C. during the time period of January 7, 2019 through January 13, 2019, was insufficient for B.C.; that FBH employees, agents, and officers were inadequately trained and supervised, and were unfit for their positions and potentially dangerous to disabled persons such as B.C.; and that FBH employees such as Otabil were abusing FBH residents, including B.C..

60.    Defendants, FBH and UHS, proximately and foreseeably caused the injuries to B.C. by failing to appropriately supervise B.C.'s program, to appropriately hire, train and supervise its staff at FBH, to ensure that an adequate number of trained staff were present at all times, and to develop and maintain a safe and appropriate residential program for B.C..

61.    The Defendants' conduct constituted negligence, gross negligence and recklessness and proximately caused B.C. significant damages.

62.    The aforementioned conduct of Defendants was outrageous and/or done willfully, wantonly, and/or with reckless indifference to B.C.'s rights and directly and proximately caused his injuries.

63.    Defendants knew or should have known that their acts of failing to adequately staff the unit and properly hire, train, and supervise their staff created an unreasonable risk of harm to the clients at FBH, including B.C.

64.    Despite more than adequate notice of numerous instances of neglect and abuse of other patients at FBH and other similar UHS facilities due to, *inter*

*alia*, inadequate hiring, training and supervision and the deficiencies noted herein, Defendants knowingly and/or deliberately failed to protect B.C. from neglect and abuse by ensuring adequate staffing, training, and supervision, exhibiting negligent, grossly negligent, reckless, and deliberate indifference to B.C.'s rights, safety and well-being.

65.     B.C.'s injuries occurred while he required, was known to require, and had been guaranteed constant 2:1 supervision at FBH, and higher levels during activities of daily living including using the bathroom and showering.

66.     Defendants offered no rational explanation as to the cause of B.C.'s injuries.

67.     Defendants' negligence may be inferred under the doctrine of *res ipsa loquitor*, inasmuch as the extensive injuries suffered by B.C. are of the type which do not normally occur in the absence of abuse or negligence or gross negligence or recklessness under the circumstances described herein; the injuries suffered by B.C. occurred while his person was under the exclusive control of Defendants; and the injuries suffered by B.C. were not due to any voluntary action or contribution on his part.

68.     Defendants' acts and/or omissions described herein also violated their public duty as a matter of law to provide safe, appropriate and properly

supervised habilitation, care, and treatment for B.C. in compliance with federal and state statutory and regulatory requirements to provide adequate and safe staffing and habilitative care consistent with the individual service plan for persons such as B.C.

69.     Defendants' abuse of B.C. thus constituted negligence *per se*.

70.     The harms suffered by B.C. were the direct, proximate and foreseeable results of Defendants' acts and omissions described herein.

71.     As a direct and proximate result of Defendants' negligence, gross negligence and recklessness as set forth above, B.C. was abused and injured, and has suffered severe physical and emotional trauma, post-traumatic stress disorder, escalating maladaptive and self-injurious behaviors, separation from family and other relationships, and loss of life's most basic pleasures.  He has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries he has suffered due to Defendants' negligence and recklessness.

WHEREFORE, Plaintiffs demand judgment against Defendants, for compensatory damages, punitive damages, medical expenses, attorneys' fees and costs, and all other compensation which this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars ($75,000).

## COUNT II

## CLAIMS BASED UPON SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794 ("SECTION 504")

## PLAINTIFFS vs. ALL DEFENDANTS

72.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs in this Complaint.

73.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits the exclusion of, or discrimination against, handicapped persons in federally funded programs. Section 504 provides that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under any program or activity that either receives Federal financial assistance or is conducted by any Executive agency or the United States Postal Service." 29 U.S.C. § 794.

74.     Under Section 504, a "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities." 34 C.F.R. § 104.3. The term "physical or mental impairment" is defined as "any physical or psychological disorder such as . . . emotional or mental illness and specific learning disabilities" Id. The term "major life activities" is defined as "functions such as caring for one's self . . .

learning and working." 34 C.F.R. § 104.3.

75.    At all times relevant to this Complaint, B.C. was a qualified individual with a disability for purposes of Section 504.

76.    At all times relevant to this Complaint, Defendants knew of B.C.'s disability.

77.    Defendants owed B.C. a duty of care to provide him with an appropriate and properly supervised residential program in accordance with Section 504.

78.    Defendants breached their duty of care under Section 504 in failing to provide B.C. with a safe and appropriate residential program and to be free from abuse and bodily harm at the hands of his caregivers.

79.    Defendants' conduct in failing to provide B.C. with a safe and appropriate residential program denied him the benefits of his program.

80.    Despite his disabilities, at all times relevant to this Complaint, B.C. was otherwise qualified to participate in FBH's residential program with appropriate accommodations and supplemental supports for purposes of Section 504.

81.    Defendants discriminated against B.C. by failing to provide him with a safe and properly supervised residential program, ultimately causing his injuries.

82.    B.C.'s disability was the basis for, and cause of, the discrimination against him, denial of benefits of his program, and his injuries.

83.    Defendants are the recipients of multiple sources of federal financial assistance and funds.

84.    Defendants' conduct constituted a conscious disregard for, and deliberate indifference to, B.C.'s rights under Section 504 to a safe and appropriate residential program, and to be free from abuse and bodily harm at the hands of his caregivers.

85.    As a direct and proximate result of Defendants' violations of Section 504 as set forth above, B.C. was abused and injured, and has suffered severe physical and emotional trauma, post-traumatic stress disorder, escalating maladaptive and self-injurious behaviors, separation from family and other relationships, and loss of life's most basic pleasures.  He has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries he has suffered due to Defendants' violations of Section 504.

WHEREFORE, Plaintiffs demand judgment against Defendants, for compensatory damages, punitive damages, complete medical expenses, attorneys' fees and costs, and all other compensation which this Court deems

fair and proper, in an amount in excess of seventy-five thousand dollars ($75,000).

## COUNT III

## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101

## PLAINTIFFS vs. ALL DEFENDANTS

86.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

87.    Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A hospital such as FBH is a "place of public accommodation."  42 U.S.C. § 12181(7)(F).

88.    At all times relevant to this Complaint, B.C. was a qualified individual with a disability for purposes of the ADA.

89.    At all times relevant to this Complaint, Defendants knew of B.C.'s disability.

90.    Defendants owed B.C. a duty of care to provide B.C. with an appropriate and properly supervised residential program free from physical and/or mental abuse in accordance with the ADA.

91.    Defendants breached their duty of care under the ADA in failing to provide B.C. with a safe and appropriate residential program and to be free from abuse and bodily harm at the hands of his caregivers.

92.    Defendants' conduct in failing to provide B.C. with a safe and appropriate residential program free from physical and/or mental abuse denied him the benefits of his program.

93.    Despite his disabilities, at all times relevant to this Complaint, B.C. was otherwise qualified to participate in the Defendants' residential program with appropriate accommodations and supplemental supports for purposes of the ADA.

94.    Defendants discriminated against B.C. by failing to provide B.C. with a safe and properly supervised residential program, ultimately causing his injuries.

95.    B.C.'s disability was the basis for, and cause of, the discrimination against him, denial of benefits of his program, and his injuries.

96.    Defendants' conduct constituted a conscious disregard for, and deliberate indifference to, B.C.'s rights under the ADA to a safe, appropriate and properly supervised residential program, and to be free from abuse and bodily harm at the hands of his caregivers.

97.    As a direct and proximate result of Defendants' violations of the ADA as set forth above, B.C. was abused and injured, and has suffered severe physical and emotional trauma, post-traumatic stress disorder, escalating maladaptive and

self-injurious behaviors, separation from family and other relationships, and loss of life's most basic pleasures, and without the declaratory and injunctive relief sought herein, B.C. and others similarly situated may be subject to similar abuse and harm.

98.    B.C. has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries he has suffered due to Defendants' violations of the ADA.

WHEREFORE, Plaintiffs demand declaratory judgment and injunctive relief against Defendants, and respectfully request that the Court declare Defendants' past actions and inactions to violate the ADA, and to compel Defendants to take all necessary steps to insure that Defendants adequately hire, train, staff and supervise their programs to avoid future injuries to B.C. and other individuals similarly situated.

## COUNT IV

## BREACH OF FIDUCIARY DUTY

## PLAINTIFFS vs. FBH and UHS

99.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs in this Complaint.

100.    A fiduciary relationship existed between Defendants, including its employees, agents, and officers, and B.C., in that B.C. reposed a special confidence

in Defendants to the extent that B.C. and Defendants did not deal with each other on equal terms, due to B.C.'s disabilities, as well as his dependence and justifiable trust on Defendants and their personnel.

101.   Defendants breached that duty through their actions as set forth above.

102.   As a direct and proximate result of Defendants' breaches of fiduciary duty, B.C. was abused and injured, and has suffered severe physical and emotional trauma, post-traumatic stress disorder, escalating maladaptive and self-injurious behaviors, separation from family and other relationships, and loss of life's most basic pleasures.

103.   B.C. has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries he has suffered due to Defendants' breaches of fiduciary duty.

WHEREFORE, Plaintiffs demand judgment against Defendants, for compensatory damages, punitive damages, medical expenses, attorneys' fees and costs, and all other compensation which this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars ($75,000).

## COUNT V

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## PLAINTIFFS vs. FBH and UHS

104.   Plaintiffs incorporate by reference all preceding and subsequent

paragraphs in this Complaint.

105.   As set forth above, the Defendants owed B.C. a pre-existing duty of care through having a fiduciary relationship with him.

106.   Defendants, as set forth above, breached that duty, causing B.C. significant emotional distress, which has manifested itself in physical and psychiatric injuries, including an exacerbation of Post-Traumatic Stress Disorder.

107.   As a direct and proximate result of Defendants' violations as set forth above, B.C. was abused and injured, and has suffered severe physical and emotional trauma, post-traumatic stress disorder, escalating maladaptive and self-injurious behaviors, separation from family and other relationships, and loss of life's most basic pleasures.

108.   B.C. has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries he has suffered due to Defendants' negligence and abuse.

WHEREFORE, Plaintiffs demand judgment against Defendants, for compensatory damages, punitive damages, medical expenses, attorneys' fees and costs, and all other compensation which this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars ($75,000).

## COUNT VI

## Section 504: LOSS OF CONSORTIUM, SOCIETY, SERVICES, AND COMPANIONSHIP

## KEVIN & THERESA C. vs. FBH and UHS

109.   Plaintiffs incorporate by reference all preceding and subsequent paragraphs in this Complaint.

110.   A parent has a protected interest under federal law in the consortium, companionship, society and safety of her minor or unemancipated adult child and in preserving that child's life and physical safety, and may recover damages for loss of consortium, companionship, society, and safety of that child.  McCurdy v. Dodd, 352 F.3d 820 (3d Cir. 2003); Estate of Bailey v. County of York, 768 F.2d 503, 509 n. 7 (3rd Cir. 1985) (overruled on other grounds); Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 381-382 (E.D. Pa. 2002).

111.   Plaintiffs were deprived of B.C.'s consortium, society, services, and companionship by as a direct and proximate result of Defendants' violations as set forth above.

112.   CHOP's Philadelphia location is far from the family's home in New Jersey.  This reduced plaintiffs' ability to see him and caused them to incur expenses of travel and of staying in Pennsylvania when they felt the need to be closer.

113.   B.C.'s emotional trauma which continues to this day further diminishes

and depreciates plaintiffs' ability to connect with B.C. and denies them the full consortium, companionship, society and safety of their minor or unemancipated adult child, and they will remain responsible for his medical and habilitative expenses stemming from the Defendants' actions for years to come.

114.    Additionally, B.C.'s physical and emotional trauma have caused Kevin C., his father, to separate from his employment in order to provide care for B.C. and as a result, Kevin C. has suffered and will continue to suffer a loss of wages and impairment of his earning capacity, all to the Plaintiffs' detriment and loss.

WHEREFORE, Plaintiffs demand judgment against Defendants, for compensatory damages, punitive damages, complete medical expenses, travel expenses, lodging expenses, wage loss of Kevin C., impairment of the earning capacity of Kevin C., attorneys' fees and costs, and all other compensation which this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars ($75,000).

## V.     <u>RELIEF REQUESTED</u>

Plaintiffs seek monetary compensatory damages, declaratory and injunctive relief, punitive damages, complete medical expenses, travel expenses, lodging expenses, wage loss of Kevin C., impairment of the earning capacity of Kevin C., and reasonable attorneys' fees and costs under Pennsylvania law, the Americans with Disabilities Act, and Section 504, and such other relief as this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars ($75,000).

Respectfully Submitted,

Abrahamsen, Conaboy & Abrahamsen, P.C.

By:     _____

James J. Conaboy, Esquire
Attorney ID No.: 77987

1006 Pittston Avenue
Scranton, PA 18505
(570) 348-0200
jconaboy@law-aca.com