**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KEVIN C. and THERESA C., Individually and    :
as Parents and Natural Guardians of B.C.    :
   :
                v.    :      2:20-cv-06431-WB
   :
FOUNDATIONS BEHAVIORAL HEALTH,    :
a/k/a UHS OF DOYLESTOWN, LLC;    :
UHS OF DELAWARE, INC.; UNIVERSAL    :
HEALTH SERVICES, INC.; GINA M. FUSCO,    :
PSY.D.; MOHAMMED YUSUF MODAN,    :
M.D.; JON LYFORD; ANTHONY CUSATE;    :
WENDY MONTE; DANA BACHMAN;    :
DONNA NEWTON-PUTIGNANO;    :
AMY DOLLINGER; TIM (LAST NAME    :
UNKNOWN); BERNARD OTABIL; and    :
UNKNOWN EMPLOYEES    :
   :

## BRIEF IN SUPPORT OF MOTION TO DISMISS

       Pursuant to Local Rule 7.1, this Brief is submitted in support of the Motion to Dismiss filed

by Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware,

Inc., Universal Health Services, Inc., Gina M. Fusco, Psy. D, Jon Lyford, Anthony Cusate, Wendy

Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger.

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

Introduction.................................................................................................................... 1

Legal Standard ............................................................................................................... 1

Argument ....................................................................................................................... 2

    I.    The claims against Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger must be dismissed because there is no factual content showing an entitlement to relief against them........... 2

    II.   The state-law claims against UHS of Doylestown d/b/a FBH, UHS of Delaware, Universal Health Services, Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger must be dismissed because there is no factual content showing that they engaged in grossly negligent conduct, as required......................................................................................... 6

        A.    Pennsylvania's Mental Health Procedures Act applies and provides immunity from state-law claims.............................................................................. 6

        B.    The Complaint fails to state a claim of gross negligence against these Defendants. .................................................................................................... 9

    III.  Plaintiffs' claim(s) under Section 504 of the Rehabilitation Act should be dismissed. ................................................................................................................ 10

        A.    Plaintiffs fail to allege a plausible case of discrimination. ......................... 11

        B.    The Complaint does not plausibly allege that B.C. was discriminated against "solely by reason of his handicap." ................................................. 13

    IV.  Plaintiffs' claim under the Americans With Disabilities Act should be dismissed. ....... 14

        A.    There is no plausible claim for discrimination alleged.............................. 14

        B.    Plaintiffs' assertion of compensable damages and request for monetary relief under the ADA should be dismissed. ..................................................... 18

    V.    Plaintiffs' "loss of consortium" claim should be dismissed............................................ 18

    VI.  Punitive damages are not recoverable in an action under Section 504 of the Rehabilitation Act. ................................................................................................. 20

    VII. To the extent the claims against FBH, UHS of Doylestown, LLC, UHS of Delaware, Inc., or Universal Health Services, Inc., and any of the individually named Defendants, seek to assert vicarious liability for the conduct of Defendant Bernard Otabil, they should be dismissed.................................................................... 20

Conclusion .................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Montgomery Hosp.*,
    696 A.2d 1175 (Pa. 1997) ...................................................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................ 1, 2, 3, 5, 9, 10, 11, 12, 14, 16, 18, 20, 22, 23

*Babb v. Wilkie*,
    589 U.S. ___, 140 S. Ct. 1168 (2020) ................................................................... 17

*Barnes v. Gorman*,
    536 U.S. 181 (2002) ............................................................................................. 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 1, 10, 12, 16, 18

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
    974 F. Supp. 459 (D.N.J. 1997) ...................................................................... 15, 17

*Clark v. Cohen*,
    794 F.2d 79 (3d Cir. 1986) .................................................................................. 12

*Connelly v. Lane Constr. Corp.*,
    809 F.3d 780 (3d Cir. 2016) ...................................................................... 2, 16, 22

*Dean v. Bowling Green-Brandywine*,
    225 A.3d 859 (2020) .............................................................................................. 7

*DeJesus v. U.S. Dep't of Veterans Affairs*,
    479 F.3d 271 (3d Cir. 2007) ................................................................................ 7, 9

*Farago v. Sacred Heart Gen. Hosp.*,
    562 A.2d 300 (Pa. 1989) ....................................................................................... 7

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .................................................................................. 2

*Fry v. Napoleon Community Schools*,
    580 U.S. ___, 137 S. Ct. 743 (2017) ................................................................... 11

*Garcia v. County of Bucks*,
    155 F. Supp. 2d 259 (E.D. Pa. 2001) ................................................................. 19

*Giterman v. Pocono Med. Ctr.*,
    361 F. Supp. 3d 392 (M.D. Pa. 2019) ................................................................. 18

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008) ............................................................................................. 17

*Howard v. Zaney Bar*,
    85 A.2d 401 (Pa. 1952) ....................................................................................... 22

*Karczewski v. DCH Mission Valley LLC*,
    862 F.3d 1006 (9th Cir. 2017) ........................................................................ 15, 17

*Krist v. Kolombos Rest., Inc.,*
    688 F.3d 89 (2d Cir. 2012) ................................................................................ 18

*Leight v. Univ. of Pittsburgh Physicians,*
    243 A.3d 126 (Pa. 2020) ..................................................................................... 7

*Lockhoff v. Slonaker,*
    2017 WL 2423790 (E.D. Pa. Jun. 5, 2017) ..................................................... 22

*Lunn v. Boyd,*
    169 A.2d 103 (Pa. 1961) .............................................................................. 21, 23

*Martin v. PGA Tour, Inc.,*
    994 F. Supp. 1242 (D. Or. 1998), *aff'd*, 204 F.3d 994 (9th Cir. 2000), *aff'd*,
    532 U.S. 661 (2001) ........................................................................................... 15

*Martinez v. UPMC Susquehanna,*
    986 F.3d 261 (3d Cir. Jan. 29, 2021) ............................................................. 2, 9

*McMaster v. Reale,*
    110 A.2d 831 (Pa. Super. 1955) ........................................................................ 21

*Nathanson v. Medical College,*
    926 F.2d 1368 (3d Cir. 1991) ........................................................................... 11

*P.C. v. McLaughlin,*
    913 F.2d 1033 (2d Cir. 1990) ........................................................................... 11

*Pallozzi v. Allstate Life Ins. Co.,*
    198 F.3d 28 (2d Cir. 1999) ......................................................................... 15, 17

*Potter Title & Trust Co. v. Knox,*
    113 A.2d 549 (Pa. 1955) ................................................................................... 21

*Powell v. Nat'l Bd. of Med. Exam'rs,*
    364 F.3d 79 (2d Cir. 2004) ............................................................................... 18

*R.A. ex rel. N.A. v. First Church of Christ,*
    748 A.2d 692 (Pa. Super. 2000) ................................................................. 21, 23

*Sarin v. Magee,*
    333 F. Supp. 3d 475 (E.D. Pa. 2018) ............................................................... 22

*Southeastern Community College v. Davis,*
    442 U.S. 397 (1979) .......................................................................................... 11

*Strathie v. Dep't of Trans.,*
    716 F.2d 227 (3d Cir. 1983) ............................................................................. 11

*Traynor v. Turnage,*
    485 U.S. 535 (1988) .......................................................................................... 11

*Wagner by Wagner v. Fair Acres Geriatric Ctr.,*
    49 F.3d 1002 (3d Cir. 1995) ................................................................. 10, 11, 13

*Zankel v. United States,*
    2008 WL 828032 (W.D. Pa. Mar. 25, 2008) .................................................. 21

**Statutes**

Mental Health Procedures Act,
  Act 143 of 1976, PL 817 (Jul. 9, 1976), 50 P.S. §§ 7101, *et seq.* .................................................. 6

50 P.S. § 7102 ............................................................................................................................ 7

50 P.S. § 7104 ............................................................................................................................ 8

50 P.S. § 7114 ...................................................................................................................... 7, 8, 10

Rehabilitation Act of 1973,
  PL 93-112, 87 Stat. 355 (Sept. 26, 1973) ........................................................................... 10

29 U.S.C. § 794 ..................................................................................................................... 10, 13

Americans with Disabilities Act of 1990,
  104 Stat. 328, 42 U.S.C. §§ 12101, *et seq.* ........................................................................ 14

42 U.S.C. § 12182 ................................................................................................................. 15, 17

42 U.S.C. § 12188 ...................................................................................................................... 18

**Rules**

Fed. R. Civ. P. 12 ........................................................................ 6, 10, 11, 12, 14, 18, 20, 23

Fed. R. Civ. P. 8 ................................................................. 2, 5, 6, 9, 10, 12, 14, 18, 20, 23

## INTRODUCTION

Plaintiffs' son B.C. has severe Autism Spectrum Disorder and is non-verbal with a history of concerning, aggressive, and self-destructive behaviors.  Complaint (Doc. 1) ¶¶ 2, 25–29, 47. He was admitted emergently to a hospital crisis unit, and thereafter transferred to Foundations Behavioral Health (hereinafter, "FBH"), operated by Defendant UHS of Doylestown, LLC. *Id.* ¶¶ 30–33.  While at FBH, Defendant Bernard Otabil, identified as a mental health technician, struck and pushed B.C. *Id.* ¶¶ 35–37.  This conduct by Defendant Otabil was unauthorized, and he was promptly terminated, charged criminally, and convicted.  *Cf. id.* ¶ 40 (hinting at a criminal investigation arising from his conduct).

Plaintiffs have sued, seeking compensatory, punitive, and injunctive relief.  By the Motion accompanying this Brief, Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M. Fusco, Psy. D, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger seek dismissal of Plaintiffs' Complaint.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint that pleads facts merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.  The plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly*

1

*v. Lane Constr. Corp.*, 809 F.3d 780, 786–787 (3d Cir. 2016) (citations and quotation marks omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Plausible does not mean possible. The facts must be more than 'merely consistent with a defendant's liability.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. Jan. 29, 2021) (quoting *Iqbal*, 556 U.S. at 678). While plausible also "does not mean probable," still the Court must "be able to draw a reasonable inference that the defendant has broken the law." *Martinez*, 986 F.3d at 265.

The Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009) (citations omitted).

## ARGUMENT

I.  **The claims against Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger must be dismissed because there is no factual content showing an entitlement to relief against them.**

Plaintiffs' Complaint against the individual Defendants represented by the undersigned must be dismissed for failure to state a plausible claim for relief. It names the Chief Executive Officer, the Director of Admissions, the Director of Inpatient Services, a supervisor and case manager, the Senior Director of Behavioral Services, the Assistant Director of Nursing, and the

2

Director of Compliance, Complaint (Doc. 1) ¶¶ 8–10 & 12–15, and asserts that each such high-level corporate officer and employee of FBH is, personally, liable for the incident giving rise to this case.

The Supreme Court's *Iqbal* case provides a helpful roadmap for analyzing the sufficiency of a complaint against high-ranking individuals whom the plaintiff asserts knew of and allowed his harm. There, the plaintiff had been arrested by the FBI in November of 2001, following the September terrorist attacks. He alleged that he was arrested, designated as a person of "high interest," and held in restrictive conditions all on account of his race, religion, and national origin. *Iqbal*, 556 U.S. at 669. Relevant here, his complaint alleged that John Aschroft, the United States Attorney General, and Robert Mueller, then the Director of the FBI "—officials who were at the highest level of the federal law enforcement hierarchy," *id.* at 668—were personally involved in devising the unconstitutional scheme of his arrest and confinement:

> The complaint contends that petitioners designated respondent a person of high interest on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments to the Constitution. The complaint alleges that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11." It further alleges that "[t]he policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Lastly, the complaint posits that petitioners "each knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The pleading names Ashcroft as the "principal architect" of the policy, and identifies Mueller as "instrumental in [its] adoption, promulgation, and implementation.

*Id.* at 668–669.

The Supreme Court, analyzing the complaint in light of a motion to dismiss, noted that the

3

type of accusations leveled against the high-ranking individuals were "bald allegations" of "an extravagantly fanciful nature." But, more importantly, the Court held that those allegations were disentitled to the assumption of truth because they were conclusory and devoid of necessary factual support:

> We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it. These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, namely, that petitioners adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." As such, the allegations are conclusory and not entitled to be assumed true. To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. We do not so characterize them any more than the Court in *Twombly* rejected the plaintiffs' express allegation of a "'contract, combination or conspiracy to prevent competitive entry,'" because it thought that claim too chimerical to be maintained. It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

*Id.* at 680–681 (citations omitted).

The Complaint in this case asserts that the high-level corporate officers and employees of FBH are all personally liable for the incident giving rise to this case. That includes, as noted above, the Chief Executive Officer, the Director of Admissions, the Director of Inpatient Services, a supervisor and case manager, the Senior Director of Behavioral Services, the Assistant Director of Nursing, and the Director of Compliance. Complaint (Doc. 1) ¶¶ 8–10 & 12–15. These mostly C-suite–level positions appear in the Complaint's identification of the parties, *id.*, but nowhere

else is there <u>any</u> "factual matter that, if taken as true, states a claim that" any individually named Defendant (other than Bernard Otabil) "deprived [B.C.] of his . . . rights." *Iqbal*, 556 U.S. at 666. Instead, the Complaint simply limits itself to "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *id.* at 678, as when it says in a conclusory fashion that "FBH employees, who were B.C.'s constant caretakers, caused B.C.'s injuries through abuse, or through extreme and reckless lack of care." Complaint (Doc. 1) ¶ 48. Without any factual support, the Complaint simply labels "FBH's actions, and the actions of all the named Defendants, [as] negligent, reckless, [and] indifferent." *Id.* ¶ 49; *see also id.* ¶¶ 38 & 39 (asserting broadly that "FBH was in possession of videotaped evidence" but "did not monitor its camera system," though identifying no person—a defendant or otherwise—who failed in that regard).

This case arose from the criminal conduct of Defendant Bernard Otabil, who struck B.C., a dependent individual. Complaint (Doc. 1) ¶¶ 5 & 37. The assertion that the CEO and Director of Admissions, etc., of FBH are all directly at fault for causing that harm to B.C. is too fanciful to be believed. *Iqbal*, 556 U.S. 681. But even so, the Complaint utterly fails to "show" an entitlement to relief, Fed. R. Civ. P. 8(a)(2), because it does not plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, against Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger. There is instead <u>no factual content</u> acceptable as true that any of these individuals was in a position to prevent (or cause) any harm to B.C. as alleged in the Complaint. As in *Iqbal*, the allegations of B.C.'s harm are serious and troubling; but the Complaint fails for lack of requisite factual content that the individual Defendants caused the harm. *Cf. Iqbal*, 556 U.S. at 683 (noting that "here the complaint alleges discrete wrongs—for instance, beatings—by lower level Government actors," and "if true, and if condoned by [the high-ranking defendants],

could be the basis for some inference of wrongful intent on [their] part," but ultimately concluding that the complaint did "not meet the standard necessary to comply with Rule 8" because it "does not contain any factual allegation sufficient to plausibly suggest" torts committed by the individual high-ranking defendants).

Therefore, the Court should grant this Motion, and dismiss all claims against Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger. Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6).

**II.    The state-law claims against UHS of Doylestown d/b/a FBH, UHS of Delaware, Universal Health Services, Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger must be dismissed because there is no factual content showing that they engaged in grossly negligent conduct, as required.**

The Complaint includes three counts asserting state-law claims: Count I (asserting various tort claims), Count IV (asserting breach of fiduciary duty), and Count V (asserting negligent infliction of emotional distress). Because these Defendants are immune under the Mental Health Procedures Act, Act 143 of 1976, PL 817 (Jul. 9, 1976), 50 P.S. §§ 7101, *et seq.* ("MPHA"), from claims for anything less than gross negligence, Counts I, IV, and V—which are not supported by factual content plausibly stating such conduct—must be dismissed as to these Defendants.

**A.    Pennsylvania's Mental Health Procedures Act applies and provides immunity from state-law claims.**

"The purpose of the MHPA is to establish procedures to effectuate the Act's policy—assuring the availability of adequate treatment to those who are mentally ill. The legislature, through the MHPA, and in conformity with principles of due process, sought to assure the availability of voluntary and involuntary treatment 'where the need is great and its absence could result in serious harm to the mentally ill person or to others.'" *Leight v. Univ. of Pittsburgh*

6

*Physicians*, 243 A.3d 126, 130 (Pa. 2020) (citing 50 P.S. § 7102). "Generally, the terms of the

MHPA have been broadly construed by Pennsylvania courts." *DeJesus v. U.S. Dep't of Veterans*

*Affairs*, 479 F.3d 271, 284 (3d Cir. 2007).

In furtherance of the MHPA's policy to assure the availability of adequate treatment, it

provides immunity to those involved in the care of the mentally ill, *Leight*, 243 A.3d. at 130, which

includes all individuals "who participate[] in a decision that a person be examined or treated." 50

P.S. § 7114. Specifically, the Act

> protects from civil and criminal liability those individuals and
> institutions that provide treatment to mentally ill patients, and, thus,
> promotes the statutory goal of ensuring such treatment remains
> available. This immunity protection, however, does not insulate
> individuals from liability for acts of willful misconduct or gross
> negligence.

*Leight*, 243 A.3d at 130 (citing 50 P.S. § 7114); *see also Dean v. Bowling Green-Brandywine*, 225

A.3d 859, 869 (Pa. 2020) (citing *Farago v. Sacred Heart Gen. Hosp.*, 562 A.2d 300, 304 (Pa.

1989) (one purpose of MHPA "is to provide limited protection from civil and criminal liability to

mental health personnel and their employers in rendering treatment in [the] unscientific and inexact

[mental health] field")) (alterations in original).

The MHPA thus applies to those who provide "treatment to persons who are mentally ill,"

50 P.S. § 7102, which the Pennsylvania Supreme Court interpreted in this way:

> Section 114 of the MHPA does not specifically define what is
> encompassed within the term "treated." However, definitions of
> "treatment" and "adequate treatment" can be found elsewhere in the
> MHPA. In particular, the MHPA provides as follows:
>
> > Adequate treatment means a course of treatment designed and
> > administered to alleviate a person's pain and distress and to
> > maximize the probability of his recovery from mental illness. It
> > shall be provided to all persons in treatment who are subject to
> > this act. It may include inpatient treatment, partial
> > hospitalization, or outpatient treatment. *Adequate inpatient*

7

> *treatment shall include such* accommodations, diet, heat, light, sanitary facilities, clothing recreation, education and *medical care as are necessary to maintain decent, safe and healthful living conditions.*
>
> Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and *to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery.*

50 P.S. § 7104 (Provision for Treatment).

*Allen v. Montgomery Hosp.*, 696 A.2d 1175, 1178–1179 (Pa. 1997) (emphasis added by *Allen*). The MHPA's grant of immunity thus includes individuals and also facilities. *Dean*, 225 A.3d at 869 ("We have broadly interpreted protected 'persons' under Section 114 [50 P.S. § 7114] to include hospitals and other treatment facilities as well as their employees because denying such entities immunity would undermine the goals of the MHPA.") (citing *Allen*, 696 A.2d at 1178; *Farago*, 562 A.2d at 303).

The MHPA thus applies to the Defendants in this case. Here, the Complaint recounts that B.C. began engaging in aggressive behavior, such that his parents "were concerned that he would harm himself or others," and "[a]s a result of the aggressive actions of B.C., it was determined that he needed medical care and treatment." Complaint (Doc. 1) ¶¶ 25–27. After being restrained at a hospital emergency department, he was transferred to the hospital's crisis unit, and thereafter to FBH. *Id.* ¶¶ 28–30, 32–33. Plaintiffs allege that "FBH, UHS, and all named Defendants were responsible for the safe operation of FBH, in which B.C. resided, including providing a program of services . . . [to] protect and promote the physical and mental well-being of its residents, including B.C." *Id.* ¶ 20 (emphasis added). They also allege that Defendant Bernard Otabil "was employed as a mental health technician," *id.* ¶ 35, that B.C. is an individual with "emotional or mental illness," *id.* ¶¶ 74 & 75, and that FBH had a duty "to appropriately supervise, educate,

8

habilitate, and treat B.C.," *id.* ¶ 54 (emphasis added).

This is consistent with the MPHA's recognized application to treatment for individuals with autism spectrum disorder. *See, e.g.*, *Commonwealth v. Rabold*, 951 A.2d 329 (Pa. 2008) (MHPA hearing properly invoked following jury's verdict of guilty but mentally ill, for an individual it with autism); *Pink v. UPMC Presbyterian Shadyside*, 2016 WL 5173636, at *1 (Pa. Super. Jul. 14, 2016) (individual with autism and impulse disorder involuntarily committed under the Mental Health Procedures Act); *cf. DeJesus*, 479 F.3d at 274–275 & 284–286 (holding that the MHPA applies to residential treatment provided to someone who engages in "discrete incidents of either destruction or violence . . . disproportionate to the stimulus").

Therefore, the MHPA's grant of immunity applies to Defendants UHS of Doylestown, FBH, UHS of Delaware, Universal Health Services, Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger for purposes of this case.

## B. The Complaint fails to state a claim of gross negligence against these Defendants.

As argued above, Rule 8 requires a "showing" of an entitlement to relief, Fed. R. Civ. P. 8(a)(2), which requires a factual recitation "more than 'merely consistent with a defendant's liability.'" *Martinez*, 986 F.3d at 265 (quoting *Iqbal*, 556 U.S. at 678). A complaint must have more than a conclusory recitation of the elements of a claim. *Iqbal*, 556 U.S. at 680–681.

The factual content of this Complaint is wholly lacking in support of its bald assertion of the conclusory labels "gross negligence" and "recklessness." Again, the Complaint asserts clearly and unequivocally that Defendant Bernard Otabil struck B.C., who was incompetent to defend himself. Complaint (Doc. 1) ¶¶ 5 & 37. But there is no narration of "sufficient factual matter,

9

accepted as true," *Iqbal*, 556 U.S. at 678, that FBH, UHS of Doylestown, UHS of Delaware, Universal Health Services, Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, or Amy Dollinger engaged in any act or omission that could plausibly be characterized as grossly negligent. There is simply no factual content at all regarding any of these Defendants other than their identification. Complaint (Doc. 1) ¶¶ 6–10, 12–15. Following that, the Complaint merely makes a conclusory assertion that B.C.'s harm resulted from "extreme and reckless lack of care" and that all of their "actions"—nowhere specified in any respect—"were negligent, reckless, intentional and/or deliberately indifferent." *Id.* ¶¶ 48–49.

"Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. The Court should grant this Motion and dismiss the state-law claims in Counts I, IV, and V against FBH, UHS of Doylestown, UHS of Delaware, Universal Health Services, Gina Fusco, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger, because they are immune from the claims—as asserted—under 50 P.S. § 7114. Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678.

### III.  Plaintiffs' claim(s) under Section 504 of the Rehabilitation Act should be dismissed.

Count II of the Complaint asserts a claim under Section 504 of the Rehabilitation Act of 1973, PL 93-112, 87 Stat. 355 (Sept. 26, 1973). Count VI also mentions Section 504 in its title.

There is no doubt that "Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits a federally funded state program from discriminating against a handicapped individual solely by reason of his or her handicap." *Wagner by Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1008–1009 (3d Cir. 1995). Therefore, in order to state a plausible claim for relief under

Section 504, a complaint must allege

> (1) that [the plaintiff] is a "handicapped individual" under the Act,
> (2) that he is "otherwise qualified" for the position sought, (3) that
> he was excluded from the position sought "solely by reason of his
> handicap," and (4) that the program or activity in question receives
> federal financial assistance.

*Wagner*, 49 F.3d at 1009 (citing *Nathanson v. Medical College*, 926 F.2d 1368, 1380 (3d Cir.

1991); *Strathie v. Dep't of Trans.*, 716 F.2d 227 (3d Cir. 1983)).   Here the Complaint fails

sufficiently to assert such a plausible claim for two reasons: B.C. was not excluded from services,

and was not treated in the manner alleged "solely by reason of his handicap."  The claim, therefore,

should be dismissed.  Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678.

### A.  Plaintiffs fail to allege a plausible case of discrimination.

Section 504 of the Rehabilitation Act "aim[s] to root out disability-based discrimination,

enabling each covered person (sometimes by means of reasonable accommodations) to participate

equally to all others in public facilities and federally funded programs."  *Fry v. Napoleon*

*Community Schools*, 580 U.S. ___, 137 S. Ct. 743, 756 (2017).  Its "central purpose . . . is to assure

that handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped

individuals."  *Traynor v. Turnage*, 485 U.S. 535, 548 (1988).  "The language and structure of the

Rehabilitation Act of 1973 reflect a recognition by Congress of the distinction between the

evenhanded treatment of qualified handicapped persons and affirmative efforts to overcome the

disabilities caused by handicaps."  *Southeastern Community College v. Davis*, 442 U.S. 397, 410

(1979).  Section 504 does not "establish an obligation to meet [a person's] particular needs vis-à-

vis the needs of other handicapped individuals, but mandate[s] only that services provided

nonhandicapped individuals not be denied [to a person] because he is handicapped."  *P.C. v.*

*McLaughlin*, 913 F.2d 1033, 1041 (2d Cir. 1990).  "Section 504 prohibits discrimination against

the handicapped in federally funded programs. It imposes no affirmative obligations . . . to furnish services." *Clark v. Cohen*, 794 F.2d 79, 85 n.3 (3d Cir. 1986).

Plaintiffs have failed to state a plausible claim that B.C. was denied access to services and treatment benefits at FBH that were provided to non-handicapped individuals. The Complaint alleges that FBH operates "a psychiatric facility" providing residential treatment options to handicapped individuals such as B.C. Complaint (Doc. 1) ¶¶ 2, 20, & 73–75. It also alleges that B.C. <u>was admitted</u> to FBH's facility, for the purpose of treating his alarming aggressive behaviors. *Id.* ¶¶ 20, 25–33. The Complaint nowhere alleges any "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678, that B.C. was excluded from treatment or other services at FBH, while non-handicapped individuals were admitted to or provided with such treatment and services at FBH. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Here, though, the only reasonable inference from the Complaint is that B.C. was one of a number of handicapped individuals being treated at FBH, but he was inappropriately subjected to a violent act by Defendant Bernard Otabil.

Plaintiffs' Complaint is "devoid of 'further factual enhancement'" beyond mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 & 557). It simply asserts "an unadorned, the-defendant-unlawfully-harmed-me accusation," which "will not do." *Id.* Therefore, the claim(s) under Section 504 of the Rehabilitation Act should be dismissed. *Id.*; Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6).

**B. The Complaint does not plausibly allege that B.C. was discriminated against "solely by reason of his handicap."**

As noted above, Section 504 of the Rehabilitation Act "prohibits a federally funded state program from discriminating against a handicapped individual solely by reason of his or her handicap." *Wagner*, 49 F.3d at 1008–1009. The qualifier "solely by reason of his or her handicap" is expressly stated in the text of the statute:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, <u>solely by reason of her or his disability,</u> be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (emphasis added).

However, Plaintiffs scrubbed that qualifier from their Complaint, when purporting to quote the statute's text. They state as follows:

> Section 504 provides that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subject to discrimination under any program or activity that either receives Federal financial assistance or is conducted by any Executive agency or the United States Postal Service." 29 U.S.C. § 794.

Complaint (Doc. 1) ¶ 73 (quoted verbatim). The Complaint plainly omits the statutory limitation of Section 504 to claims of discrimination "solely by reason of his or her handicap." 29 U.S.C. § 794(a).

There is no plausible content in Plaintiffs' Complaint that B.C. was mistreated "solely by reason of his handicap." Instead, the Complaint plainly asserts that B.C. was admitted to FBH for treatment because of his disability, Complaint (Doc. 1) ¶¶ 25–33, but intolerably struck by Defendant Bernard Otabil:

13

> During [B.C.'s] in-patient hospitalization at FBH, the Defendant, Bernard Otabil, was employed by FBH has a mental health technician.
>
> In his capacity as a mental health technician, the Defendant, Bernard Otabil, was to provide care, comfort, and treatment to B.C. while he was an in-patient at Defendant, FBH.
>
> During his in-patient hospitalization at FBH, B.C. was treated violently by the Defendant, Bernard Otabil, who pushed B.C. to the floor multiple times and struck him multiple times.

*Id.* ¶¶ 35–37.

If there were any shortcoming in the treatment, the Complaint does not plausibly state that it was "solely by reason of" B.C.'s disabilities. Instead, the Complaint merely asserts that B.C. was the target of abusive behavior by one bad actor, who acted for personal reasons, and who should have instead provided the treatment for which B.C. was admitted to FBH. Plaintiffs have therefore failed to make a plausible "showing" that they are entitled to relief, and their claim(s) under Section 504 of the Rehabilitation Act should be dismissed. Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

**IV.    Plaintiffs' claim under the Americans With Disabilities Act should be dismissed.**

In Count III, Plaintiffs assert a claim under the Americans with Disabilities Act of 1990, 104 Stat. 328, 42 U.S.C. §§ 12101, *et seq.* Specifically, Plaintiffs allege a claim pursuant to Title III thereunder.

**A.  There is no plausible claim for discrimination alleged.**

The ADA prohibits discrimination against disabled individuals, as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

14

42 U.S.C. § 12182(a).

Courts have recognized that disabled individuals have an interest in being free from discrimination in various aspects of everyday life. *E.g., Martin v. PGA Tour, Inc.*, 994 F. Supp. 1242, 1246 (D. Or. 1998). Hence the ADA's mandate that individuals "be accorded 'full and equal enjoyment of the goods, [and] services of any place of public accommodation.'" *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32–33 (2d Cir. 1999). The statutory imperative means that "an entity covered by Title III is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability." *Id.*

The questions that arise when a claim is asserted under Title III of the ADA are these: "does the ADA apply, and may a reasonable modification be made to accommodate a disabled individual?" *Martin*, 994 F. Supp. at 1246, *aff'd*, 204 F.3d 994 (9th Cir. 2000), *aff'd*, 532 U.S. 661 (2001). In analyzing a claim of discrimination under Section 12182—such as Plaintiffs' Count III here, *see* Complaint (Doc. 1) ¶ 87—the Court must "determine whether a defendant either: (i) imposed eligibility criteria that tended to screen out an individual with a disability, or (ii) failed to make reasonable modifications in policies, practices, or procedures, which were necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 974 F. Supp. 459, 464–465 (D.N.J. 1997); *see also Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1009 (9th Cir. 2017) ("Title III of the ADA prohibits discrimination by public accommodations. Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience.") (citations omitted).

As they did with respect to the Rehabilitation Act claim(s), Plaintiffs' Complaint fails to

state a plausible ADA claim of discrimination against B.C. on the basis of his disability, compared to non-disabled individuals. Again, FBH is, according to the Complaint, a "psychiatric facility" that admitted B.C. as a residential patient for treatment for his aggressive behaviors. Complaint (Doc. 1) ¶¶ 2, 20, 25–33. The Complaint contains no "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), that B.C. was denied access to treatment or other services at FBH while non-handicapped individuals were admitted to or provided with such treatment and services.

The Complaint also makes the conclusory and not-well-pled assertion that B.C. was qualified for FBH's services "[d]espite his disabilities," and discriminated against because of them. Complaint (Doc. 1) ¶¶ 93–94. Understanding that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and relying on "its judicial experience and common sense," *Connelly*, 809 F.3d at 786–787, the Court should conclude that this claim is insufficiently stated. The only reasonable inference from the Complaint is that B.C. was qualified for FBH's treatment services because of his disability, and improperly struck by Defendant Bernard Otabil despite his disability. *See* Complaint (Doc. 1) ¶¶ 5 & 37 (alleging that Defendant Bernard Otabil struck B.C., who was incompetent to defend himself). The Complaint is simply "devoid of 'further factual enhancement'" beyond mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 & 557).

Further, the type of behavior that Plaintiffs' Complaint is premised on is not the type targeted by the ADA for eradication. As noted above, courts have universally recognized that the ADA—especially Title III, against public accommodations—was passed in order to eliminate

bars-to-full-access suffered by disabled individuals. *Karczewski*, 862 F.3d at 1009 ("Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience."); *Pallozzi*, 198 F.3d 28, 32–33 (recognizing that Title III of the ADA requires that covered entities not only "provide disabled persons with physical access," but also refrain "from refusing to sell them its merchandise by reason of discrimination against their disability") (quoting 42 U.S.C. § 12182(a)); *Bowers*, 974 F. Supp. at 464–465 (a court analyzing a § 12182 claim must determine "whether a defendant either: (i) imposed eligibility criteria that tended to screen out an individual with a disability, or (ii) failed to make reasonable modifications in policies, practices, or procedures, which were necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities").

The types of discrimination that animated passage of the Act are stated in the statute: the imposition of "eligibility criteria that screen out or tend to screen out" individuals from "from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations"; "a failure to make reasonable modifications in policies, practices, or procedures . . . necessary to afford such goods, services, facilities, privileges, advantages, or accommodations"; causing an "individual with a disability [to be] excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services"; and "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities." 42 U.S.C. § 12182(b)(2).

"[T]he old rule of *ejusdem generis* has an implicit lesson to teach here." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008); *see Babb v. Wilkie*, 589 U.S. ___, 140 S. Ct. 1168, 1176 n.4 (2020) (applying "the *ejusdem generis* canon" to interpret a federal anti-discrimination

statute). Title III of the ADA is clearly meant to prohibit conduct and conditions that bar access

to facility, or inhibit a person's full participation in a treatment program. It was not not enacted to

supplant state-law battery claims and prohibit the conduct of Defendant Bernard Otabil, who is

alleged to have struck and pushed B.C. for no comprehensible reason. Complaint (Doc. 1) ¶ 37–

38.

The Court should reject Plaintiffs' "unadorned, the-defendant-unlawfully-harmed-me

accusation[s]," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 & 557), and dismiss the

ADA claim for failing to show a plausible entitlement to relief on the basis of discrimination on

the basis of disability. *Id.*; Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6).

### B. Plaintiffs' assertion of compensable damages and request for monetary relief under the ADA should be dismissed.

In Count III of their Complaint Plaintiffs assert an array of personal damages and demand

monetary relief. Complaint (Doc. 1) ¶¶ 97–98. However, Title III of the ADA "authorizes private

actions only for injunctive relief, not monetary damages." *Krist v. Kolombos Rest., Inc.*, 688 F.3d

89, 94 (2d Cir. 2012) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004)

(citing 42 U.S.C. § 12188)); *cf. Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 405 (M.D.

Pa. 2019) (noting that "the only remedy for a private ADA Title III violation is injunctive relief").

Therefore, Plaintiffs' request for monetary and all other non-injunctive relief should be

dismissed. Fed. R. Civ. P. 12(b)(6).

### V.    Plaintiffs' "loss of consortium" claim should be dismissed.

In Count VI of their Complaint, Plaintiffs purport to state a claim under Section 504 of the

Rehabilitation Act and other federal law for consortium-type damages. For the reasons asserted

above, the invocation of Section 504 in this Complaint is unavailing and should be dismissed.

18

But Plaintiffs further assert that they have a recognized "interest under federal law in the consortium, companionship, society and safety of her minor or unemancipated adult child." Complaint (Doc. 1) ¶ 110. They improperly base this assertion on civil rights cases against state actors. *Id.* (citing *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003) (holding that "the fundamental guarantees of the Due Process Clause do not extend to [the] parent's interest in the companionship of his independent adult child") (emphasis added); *Estate of Bailey by Oare v. York County*, 768 F.2d 503, 509 n.7 (3d Cir. 1985) (recognizing that a "father also has a cognizable liberty interest in preserving the life and physical safety of his child from deprivations caused by state action, a right that logically extends from his recognized [due process] liberty interest in the custody of his children and the maintenance and integrity of the family") (emphasis added); *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) (noting that "several District Courts have employed the Third Circuit's reasoning [in a prior case], finding that standing exists for a parent to bring suit in his or her own right under § 1983 for the loss of the companionship, society and services of a child due to alleged governmental violation of constitutional Due Process") (emphasis added)); *compare Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 264 (E.D. Pa. 2001) ("There is no derivative claim under § 1983 for loss of consortium.") (citation omitted).

There is no claim asserted against any Defendant under 28 U.S.C. § 1983. Therefore, the jurisprudence of damages recoverable thereunder does not support Plaintiffs' claim asserted in Count VI. The undersigned has found no other supporting authorities making Plaintiffs' request for consortium-type damages recoverable under Section 504 of the Rehabilitation Act, or otherwise as a stand-alone claim. Defendants note that Plaintiffs claim the same damages in Paragraph 85 of their Complaint, so Count VI is inherently duplicative and dismissal would not be prejudicial.

19

For these reasons, Plaintiffs' claim in Count VI should be dismissed.  Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678.

VI. **Punitive damages are not recoverable in an action under Section 504 of the Rehabilitation Act.**

In their *ad damnum* clauses under Counts II and VI, which assert claims under Section 504 of the Rehabilitation Act, Plaintiffs demand punitive damages.  These are not recoverable in such an action.  *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.").  Therefore, the Court should dismiss the claim for punitive damages in Counts II and VI.

VII. **To the extent the claims against FBH, UHS of Doylestown, LLC, UHS of Delaware, Inc., or Universal Health Services, Inc., and any of the individually named Defendants, seek to assert vicarious liability for the conduct of Defendant Bernard Otabil, they should be dismissed.**

Plaintiffs' Complaint asserts baldly as follows regarding the conduct of Defendant Bernard Otabil:

> During his in-patient hospitalization at FBH, B.C. was treated violently by the Defendant, Bernard Otabil, who pushed B.C. to the floor multiple times and struck him multiple times.
>
> As alleged above, at all times material and relevant hereto, the Defendant, Bernard Otabil, was acting in the course and scope of his authority consistent with his employment with the Defendant, FBH.
>
> At all times material and relevant hereto, the Defendant, Bernard Otabil, was acting to further the business interests of the Defendant, FBH.

Complaint (Doc. 1) ¶¶ 37, 51–51.

"Whether acts or omissions are within the scope of employment is a question to be answered by the law of the state where the acts or omissions occurred." *Zankel v. United States*,

20

2008 WL 828032, at *6 (W.D. Pa. Mar. 25, 2008).

"Pennsylvania law concerning the extent to which an employer is vicariously liable for the actions of its employee is well-established and crystal clear." *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 699–700 (Pa. Super. 2000).

> It is well settled that an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment. In certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee. The conduct of an employee is considered "within the scope of employment" for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.
>
> "Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law." Moreover, our courts have held that an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment.

*Id.* at 699–700 (citing *McMaster v. Reale*, 110 A.2d 831, 832 (Pa. Super. 1955) (holding that "a master is not liable for the willful misconduct of his servant, and that such willful misconduct, while it may be within the course of the employment, is not within the scope thereof"); *Potter Title & Trust Co. v. Knox*, 113 A.2d 549, 551 (Pa. 1955) (finding acts committed by employee in an outrageous or whimsical manner are not within the scope of employment); additional citations omitted); *see also Lunn v. Boyd*, 169 A.2d 103, 104 (Pa. 1961) ("The employee is impliedly authorized to use all reasonable means incident to the performance of his employment. Also, 'Where, within the scope of his employment, a servant uses unreasonable means, the master, in

21

certain circumstances, may still be liable.' Where, however, the employee commits an act
encompassing the use of force so excessive and dangerous, as to be totally without responsibility
or reason under the circumstances, the employer is not liable as a matter of law.") (citing *Howard
v. Zaney Bar*, 85 A.2d 401, 401–402 (Pa. 1952) (holding that a bartender, whose job duties
included "keeping order" in the bar and who kept a gun for that purpose, was outside the scope of
his employment when he shot a patron making unwelcome sexual advances toward another patron,
because "the use of violent force so excessive and dangerous, totally without responsibility or
reason" was "shocking and a gross abuse of all authority the bartender possessed to maintain
order," such that the Pennsylvania Supreme Court was "compelled as matter of law to absolve
defendant [employer] of vicarious liability")).

Thus, conduct that is knowingly criminal often does not serve the business objectives of an
employer. *See, e.g., Lockhoff v. Slonaker*, 2017 WL 2423790, at *16 (E.D. Pa. Jun. 5, 2017)
(Beetlestone, J.) (holding that "[b]ecause knowingly submitting false allegations to a prosecutor
would not serve the interests of the Pennsylvania State Police or be otherwise justified by a
legitimate penological purpose, such activity falls outside a Trooper's scope of employment");
*Sarin v. Magee*, 333 F. Supp. 3d 475, 483 (E.D. Pa. 2018) (declining "to adopt such an expansive
understanding of 'scope of employment' without a clear indication from the state's highest court"
that criminal activity on-the-job can further an employer's legitimate interests).

Here, the Complaint's unadorned accusation that Defendant Otabil's conduct was within
the scope of his employment and furthered FBH's interests is both a mere formulaic recitation of
the elements devoid of any factual enhancement beyond, and implausible on its face. *Iqbal*, 556
U.S. at 678.  Again relying on its common sense, *Connelly*, 809 F.3d at 786–787, the Court can
infer that some amount of force is occasionally necessary in the type of facility such as FBH

22

treating the type of individuals such as B.C. *Cf.* Complaint (Doc 1.) ¶¶ 25–33 (after acting alarmingly "towards his parents, younger brother and family pet," B.C. was first taken to a hospital emergency room and placed in four-points restraints, later transferred to the hospital's "Crisis Unit," and thereafter transferred for in-patient treatment at FBH). But where the use of force outrageously exceeds what is contemplated or necessary, as here, the scope of employment is exceeded. *See id.* ¶¶ 36–37, 44–45 (alleging Defendant Bernard Otabil "was to provide care, comfort and treatment to B.C.," but instead "violently" "pushed B.C. to the floor multiple times and struck him multiple times," engaged in conduct including "pushing, shoving, striking, and otherwise abusing B.C.," causing "blunt force trauma to the abdominal cavity"); *see R.A.*, 748 A.2d. at 699–700 ("excessive and dangerous" force imposed "without responsibility or reason" exceeds the scope of employment); *Lunn*, 169 A.2d at 104 (noting that an employee using force incidental to "authorized [use of] reasonable means incident to the performance of his employment" may remain within the scope of employment, but holding that where "the employee commits an act encompassing the use of force so excessive and dangerous, as to be totally without responsibility or reason under the circumstances, the employer is not liable as a matter of law").

Because of the nature of Defendant Bernard Otabil's conduct and the harm alleged to have been caused to B.C., the Court should conclude that the assertion of vicarious liability against FBH, UHS of Doylestown, LLC, UHS of Delaware, Inc., or Universal Health Services, Inc., and any of the individually named Defendants, is insufficiently stated, and dismiss the Complaint. Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

**CONCLUSION**

For the reasons stated herein, each Count of Plaintiffs' Complaint should be dismissed as to Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M. Fusco, Psy. D, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

*Donna M. Modestine*

By: _____
Paul F. Laughlin, Esquire
4905 W. Tilghman Street, Suite 300
Allentown, PA 18104
484-895-2300
pflaughlin@mdwcg.com

Donna M. Modestine, Esquire
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
610-354-8283
dmmodestine@mdwcg.com

*Counsel for Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M. Fusco, Psy. D, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger*

24