NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2771
_____

KEVIN C.; THERESA C., INDIVIDUALLY AND AS PARENTS
AND NATURAL GUARDIANS OF B. C.

v.

FOUNDATIONS BEHAVIORAL HEALTH, a/k/a UHS of Doylestown, LLC;
GINA M FUSCO, PSY. D.; MOHAMMED YUSUF MODAN, M.D.;
JON LYFORD; ANTHONY CUSATE; WENDY MONTE; DANA BACHMAN;
DONNA NEWTON-PUTIGNANO; AMY DOLLINGER; TIM (LAST NAME
UNKNOWN); BERNARD OTABIL; UNKNOWN EMPLOYEES;
UHS OF DELAWARE, INC.; UNIVERSAL HEALTH SERVICES, INC.,

FOUNDATIONS BEHAVIORAL HEALTH, a/k/a UHS of Doylestown, LLC;
GINA M FUSCO, PSY. D.; ANTHONY CUSATE; WENDY MONTE; DANA
BACHMAN; DONNA NEWTON-PUTIGNANO; AMY DOLLINGER;
UHS OF DELAWARE, INC.; UNIVERSAL HEALTH SERVICES, INC.,
                                        Appellants
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-06431)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 9, 2023

Before: JORDAN, PHIPPS and ROTH, *Circuit Judges*

(Filed: May 4, 2023)
_____

OPINION[*]

———————

JORDAN, *Circuit Judge*.

The Appellants seek review of the District Court's order denying their claim to immunity under Pennsylvania's Mental Health Procedures Act ("MHPA"), 50 P.S. §§ 7101, *et seq*.[1] Because the Appellants have not met their burden to demonstrate that we have appellate jurisdiction, we will dismiss their appeal.

I. **BACKGROUND**[2]

B.C. is an adult with severe autism spectrum disorder who is unable to communicate verbally. He was allegedly abused during his inpatient stay at Foundations Behavioral Health ("FBH"), a psychiatric hospital in Pennsylvania. That abuse was allegedly perpetrated by Bernard Otabil, an FBH employee who was previously implicated in the abuse of another patient at FBH. Otabil's abuse of B.C. allegedly took place in view of other FBH employees, with some of the abuse being captured on video. His parents, Kevin C. and Theresa C. (the "Plaintiffs"), brought suit, individually and as B.C.'s parents and guardians, against multiple defendants, including Otabil and FBH,

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The Appellants are UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M. Fusco, Psy. D, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger.

[2] The factual background is drawn from the allegations in the Amended Complaint.

2

asserting claims under federal and state law. They allege that B.C. suffered severe physical and emotional trauma as a result of the abuse at FBH.

As relevant here, the Appellants moved to dismiss the state law claims in Count I (negligence, gross negligence, and recklessness), Count IV (breach of fiduciary duty), and Count V (negligent infliction of emotional distress) of the Amended Complaint, arguing that the MHPA grants them immunity.[3] Specifically, the Appellants argued that the Plaintiffs failed to plead facts sufficient to show that the allegedly tortious conduct amounted to gross negligence or involved willful misconduct and so they are entitled to immunity under the MHPA as to those tort claims. The District Court disagreed, holding that the Appellants were not entitled to immunity at the motion-to-dismiss stage.[4]

This appeal followed.

---

[3] Defendant Otabil did not move to dismiss the claims against him, and he is not an Appellant in this action. One of the other defendants, Dr. Mohammed Modan, filed a separate motion to dismiss, which the District Court granted The rest of the defendants, including the Appellants, filed a joint motion to dismiss, which the District Court granted in part and denied in part.

[4] The District Court concluded that the allegations of gross negligence were insufficient with respect to one of the other defendants, Jon Lyford, and it dismissed him from the case. The joint motion to dismiss was denied in all other respects. As the appeal challenges only the District Court's denial of immunity under the MHPA, nothing more needs to be said as to the remainder of the District Court's Order and Memorandum Opinion or any of the other claims in the Amended Complaint.

3

## II. DISCUSSION[5]

### A. Legal Standard

We have an obligation to examine our jurisdiction sua sponte, "[e]ven if the parties have not raised the issue[.]"[6] *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 395 (3d Cir. 2004). The Appellants, as the parties invoking our jurisdiction, have the burden of demonstrating that the case is properly before us. *See id*. at 396 ("The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."). In determining whether that burden is satisfied, we recall the admonition that "it is improper [for a federal court] to 'resolve contested questions of law when its jurisdiction is in doubt.'" *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 360 (3d Cir. 2015) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). In that same vein, "we are mindful that statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved

---

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. For the reasons discussed herein, we conclude that the Appellants have not demonstrated that we have jurisdiction under 28 U.S.C. § 1291. "We necessarily exercise de novo review over an argument alleging a lack of appellate jurisdiction." *Reilly v. City of Atlantic City*, 532 F.3d 216, 223 (3d Cir. 2008).

[6] The Appellants' Notice of Appeal indicates they are appealing the District Court's Memorandum Opinion and Order insofar as it constituted "a denial of a state conferred immunity[.]" (J.A. at 0001a-02a.) They believe this appeal is permissible pursuant to 28 U.S.C. § 1291 under the collateral order doctrine. Shortly thereafter, we advised the parties that "[t]he order on appeal may not be final within the meaning of 28 U.S.C. § 1291 and may not be otherwise appealable at this time" and, accordingly, we required the parties to address that issue in written responses. (3d Cir. D.I. 5.) After the parties filed the requested responses, we then ordered them to address our jurisdiction in their briefing.

4

against federal jurisdiction." *United States v. Merlino*, 785 F.3d 79, 87 (3d Cir. 2015) (internal quotation marks omitted).

We are generally limited to reviewing the "final decisions" of federal district courts. 28 U.S.C. § 1291. Nevertheless, "we may also review a 'small class' of non-final orders under the collateral order doctrine." *Doe v. Coll. of N.J.*, 997 F.3d 489, 493 (3d Cir. 2021) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). An order qualifies for review under that doctrine if three requirements are met: "the order must (1) conclusively determine the disputed issue, (2) resolve an important issue separate from the merits of the action, and (3) be 'effectively unreviewable' on appeal from a final judgment." *Id.* (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)).

Whether denial of immunity conferred by state law is immediately appealable at the motion-to-dismiss stage under the collateral order doctrine turns on whether, under applicable state law, the immunity in question is immunity from liability or immunity from suit. *See Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 834 (3d Cir. 2022) (finding "dispositive" in the context of a collateral order doctrine question that "New Jersey's Tort Claims Act does not provide immunity from suit").

As we have explained,

> An immunity from suit generally is grounded in the need to free parties from the costs, burdens, and consequences of having to be party to an action and to defend one's self. Such a right will be forfeited if not vindicated prior to trial, … and its denial should be subject to immediate review.

5

*Bell Atl.-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 273 F.3d 337, 345 (3d Cir. 2001) (citation omitted).  "[A] defense against liability," as opposed to a "guarantee against having to face a suit[,]" is not immediately appealable if denied, even if that defense can be decided as a matter of law on a motion to dismiss or a motion for summary judgment.  *Id.*

### B. Nature of Immunity Under the Mental Health Procedures Act

The relevant text of the MHPA's immunity provision speaks in terms of immunity from liability:

> In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, *shall not be civilly* or criminally *liable* for such decision or for any of its consequences.

50 P.S. § 7114(a) (emphasis added).  The same is true of the title of § 7114 ("Immunity from civil and criminal liability").

The MHPA's immunity provision differs from the text of Pennsylvania's statutory reaffirmation of sovereign immunity, which provides that the Commonwealth and its officials "remain immune from suit" absent a specific waiver.  1 PA. CONS. STAT. § 2310 (2021).  The Pennsylvania Supreme Court cited that language to support its conclusion that § 2310's "protection [wa]s from a lawsuit itself not simply a mere shield from

6

judgment or liability" for purposes of Pennsylvania's collateral order doctrine.[7] *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 372 (Pa. 2021); *see also id*. at 376 (rejecting a reading that "transform[ed sovereign immunity] from a protection from suit" as being "against the express intention of the legislature as stated in" § 2310).

The Pennsylvania Supreme Court has described the MHPA immunity provision as immunity from liability on multiple occasions over the course of decades, albeit not in connection with the collateral order doctrine. *See, e.g.*, *Farago v. Sacred Heart Gen. Hosp.*, 562 A.2d 300, 302 (Pa. 1989) (describing the MHPA's immunity provision as "a *limited immunity* provision *from civil* and criminal *liability* for specific decisions regarding the treatment of the patient") (emphasis added); *Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1167 (Pa. 1997) ("The granting of summary judgment is particularly appropriate here in light of the *intent* of the Act to provide *limited immunity* from *civil* and criminal *liability* to mental health personnel and their employers in rendering treatment[.]" (quoting *Farago*, 562 A.2d at 304) (emphasis added)); *Dean v. Bowling Green-Brandywine*, 225 A.3d 859, 869 (Pa. 2020) (Section 7114 "*protects from civil* and criminal *liability* those individuals and institutions that provide treatment to mentally ill patients, and thus promotes the statutory goal of ensuring such treatment

---

[7] Pennsylvania's collateral order doctrine was originally drawn from *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), and is substantially similar to the one applied in federal courts. *See Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 369-70 (Pa. 2021) (explaining that Pennsylvania adopted, first, by case law, and, then, by rule "the three-part collateral order doctrine first formulated by the United States Supreme Court in *Cohen*," and that it "continue[s] to look to that Court's decisions for guidance in defining the contours of" its rule).

7

remains available.") (emphasis added); *Leight v. Univ. of Pittsburgh Physicians*, 243 A.3d 126, 130 (Pa. 2020) ("Specifically, 50 P.S. § 7114 *protects from civil* and criminal *liability* those individuals and institutions that provide treatment to mentally ill patients, and, thus, promotes the statutory goal of ensuring such treatment remains available.") (emphasis added).

All that said, we can find no instance where the Pennsylvania Supreme Court has squarely addressed whether the statutory immunity conferred by the MHPA's immunity provision would satisfy the Commonwealth's own collateral order doctrine rule, and the parties have identified none. For that reason, we have looked to see whether either the Pennsylvania Supreme Court or Pennsylvania's intermediate appellate courts – the Superior Court and Commonwealth Court – have reviewed the denial of immunity under the MHPA in a circumstance where the order under review would have needed to satisfy Pennsylvania's collateral order doctrine for appellate jurisdiction to lie. *See Brown v. Grabowski*, 922 F.2d 1097, 1107-09 (3d Cir. 1990) (engaging in analysis of state court practice in determining whether denial of immunity under New Jersey's Tort Claims Act was immediately appealable); *Africa v. City of Philadelphia*, 49 F.3d 945, 957-59 (3d Cir. 1995) (engaging in analysis of state court practice in connection with Pennsylvania's Political Subdivision Tort Claims Act). Such an occurrence might imply that MHPA immunity was understood to be immunity from suit. But we have found no such occurrence, despite those three courts having examined the MHPA's immunity provision on dozens of occasions going back decades. Nor have the Appellants come forward with any such example.

8

While we need not definitively opine on whether denial of the immunity conferred by the MHPA would satisfy the collateral order doctrine, we can say that the text of that provision, the Pennsylvania Supreme Court's characterization of it, and the absence of decisions reviewing denials of such immunity under the Pennsylvania collateral order doctrine, all create a grave doubt as to our jurisdiction such that we cannot proceed to the merits.

Still, three points raised by the Appellants warrant brief discussion. First, in a footnote, the Appellants cite a Pennsylvania Superior Court decision and two unpublished federal district court decisions for the proposition that "[m]any Pennsylvania court decisions describe the MHPA as referring to 'immunity from suit.'" (Opening Br. at 20 n.9.) Putting aside that none of those cases dealt with whether denial of immunity conferred by the MHPA would satisfy the collateral order doctrine (and the Appellants do not argue otherwise),[8] elsewhere in that same brief, the Appellants cite the four decisions

---

[8] The Pennsylvania Superior Court was neither reviewing the denial of MHPA immunity nor purporting to be drawing a distinction between immunity from suit and immunity from liability for purposes of the collateral order doctrine. *Bloom v. Dubois Reg'l Med. Ctr.*, 597 A.2d 671, 673, 676-77 (Pa. Super. Ct. 1991). And while *Bloom* does use the phrase "immune from suit" in more than one instance, *id.* at 677-78, it also uses the phrase "immune from liability under Section 7114(a) of the Mental Health Procedures Act," when summarizing the Pennsylvania Supreme Court's decision in *Farago*. *Id.* at 678. Not surprisingly, the two federal district court decisions had no occasion to consider the collateral order doctrine and do not purport to draw a distinction between immunity from suit and immunity from liability for purposes of appellate jurisdiction. *Ray v. Abington Twp.*, CIV.A. 02-4382, 2004 WL 1175737, at *7 (E.D. Pa. May 25, 2004), *order vacated in part on reconsideration on other grounds*; *Scherer v. Pennsylvania Dep't of Corr.*, CIV.A. 3:2004-191, 2007 WL 4111412, at *48 (W.D. Pa. Nov. 16, 2007).

9

(*Farago*, *Albright*, *Leight*, and *Dean*) we listed earlier as examples of the Pennsylvania Supreme Court characterizing the MHPA as conferring immunity from liability. Indeed, the Appellants go so far as to quote some of that same text. They do not, however, make any effort to explain why those statements are not fatal to their argument in favor of our jurisdiction.

Second, they assert that their characterization of the immunity in question as "broad" immunity from suit is consonant with the purpose of the MHPA. (Opening Br. at 21.) But the Pennsylvania Supreme Court has stated: "One of the purposes of the Mental Health Procedures Act is to provide *limited* protection from civil and criminal liability to mental health personnel and their employers in rendering treatment[.]" *Farago*, 562 A.2d at 304 (emphasis added); *see also Albright*, 696 A.2d at 1167 (stating the "intent of the Act" was to provide "limited immunity from civil … liability").

Third, the Appellants suggest a strained reading of the phrase "shall not be civilly or criminally liable for such decision or for any of its consequences." 50 P.S. § 7114(a). Specifically, they assert the "provision for immunity from civil liability 'or for any of its *consequences*' necessarily includes immunity from suit and the other 'consequences' of civil liability such as the burden of being party, to defend one's self in litigation, to undergo discovery and other pre-trial burdens." (Opening Br. at 20 (emphasis retained).) Yet both the Pennsylvania Supreme Court and the Pennsylvania Commonwealth Court have signaled that "any of its consequences" refers back to "decision." *See Werner by Werner v. Dep't of Pub. Welfare*, 530 A.2d 1004, 1007 (Pa. Commw. Ct. 1987) ("Also, the words 'or for any of its consequences' indicate that the legislature intended no

10

distinction between situations where the decision results in harm to the patient and harm to a third party. We decline to create this distinction."); *see also Goryeb v. Dep't of Pub. Welfare*, 575 A.2d 545, 549 (Pa. 1990) ("Clearly, the words 'any of its consequences' indicate the legislative recognition that discharging a severely mentally disabled person, especially an involuntary admittee who has been classified, by statutory definition, as a clear and present danger to himself or others, is a potential serious danger not only to the patient himself but to 'others.'") (footnote omitted). That more natural reading does not support the Appellants' argument in favor of jurisdiction.

### III. CONCLUSION

For the foregoing reasons, we will dismiss the appeal.