IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN C. and THERESA C., Individually and   :
as Parents and Natural Guardians of B.C.   :
  :
  :
            v.   :        2:20-cv-06431-WB
  :
FOUNDATIONS BEHAVIORAL HEALTH,   :
a/k/a UHS OF DOYLESTOWN, LLC;   :
UHS OF DELAWARE, INC.; UNIVERSAL   :
HEALTH SERVICES, INC.; GINA M. FUSCO,   :
PSY.D.; MOHAMMED YUSUF MODAN,   :
M.D.; JON LYFORD; ANTHONY CUSATE;   :
WENDY MONTE; DANA BACHMAN;   :
DONNA NEWTON-PUTIGNANO;   :
AMY DOLLINGER; TIM (LAST NAME   :
UNKNOWN); BERNARD OTABIL; and   :
UNKNOWN EMPLOYEES   :

ORDER

AND NOW, this _____ day of _____, 2023, upon consideration of

the Motion for Summary Judgment filed by Defendants UHS of Doylestown, LLC d/b/a

Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M.

Fusco, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy

Dollinger, and any response thereto, it is hereby ORDERED and DECREED that said Motion is

GRANTED.  Plaintiffs' Amended Complaint (Doc. 31) is hereby DISMISSED in its entirety,

with prejudice, as follows:

> (1)  Dismiss Count 1 (Negligence, Gross Negligence and Recklessness) as to Gina M.
> Fusco, Psy. D,  Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-
> Putignano, and Amy Dollinger for failure to produce any evidence including expert
> opinions against Moving Defendants;
>
> (2)  Dismiss Plaintiffs' Amended Complaint in its entirety as against UHS of Delaware,
> Inc., Universal Health Services, Inc. for failure to produce any evidence including expert
> opinions against them including failure to pierce the corporate veil;

(3) Dismiss Count I (Negligence, Gross Negligence and Recklessness) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health for failure to produce any evidence including expert opinions against Moving Defendants;

(4) Dismiss Count IV (Breach of Fiduciary Duty) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health;

(5) Dismiss Count V (Negligent Infliction of Emotional Distress) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health;

(6) Dismiss Count VI (Assault and Battery) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health;

(7)  Dismiss Count VII (Intentional Infliction of Emotional Distress) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health;

(8)  Dismiss Counts II and III (Rehabilitation Act and ADA) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health for failure to offer *any evidence whatsoever as to these claims against Moving Defendants.*

BY THE COURT:

_____
WENDY BEETLESTONE
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN C. and THERESA C., Individually and : 
as parents and Natural Guardians of B.C.    :
                                            :
                    v.                      :        2:20-cv-06431-WB
                                            :
FOUNDATIONS BEHAVIORAL HEALTH,              :
a/k/a UHS OF DOYLESTOWN, LLC;               :
UHS OF DELAWARE, INC.; UNIVERSAL            :
HEALTH SERVICES, INC.; GINA M. FUSCO,       :
PSY.D.; ANTHONY CUSATE; WENDY               :
MONTE; DANA BACHMAN; DONNA                  :
NEWTON-PUTIGNANO;                           :
AMY DOLLINGER; TIM (LAST NAME               :
UNKNOWN); BERNARD OTABIL; and               :
UNKNOWN EMPLOYEES                           :
                                            :

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and the other authorities marshaled in the accompanying Brief, Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M. Fusco, Psy. D, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger, by and through their counsel, Marshall, Dennehey, Warner, Coleman and Goggin, hereby seek an order dismissing Plaintiffs' Amended Complaint (Doc. 31) against them, with prejudice. More specifically, Moving Defendants are respectfully requesting that this Honorable Court:

(1)   Dismiss Count 1 (Negligence, Gross Negligence and Recklessness) as to Gina M. Fusco, Psy. D,  Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger for failure to produce any evidence including expert opinions against Moving Defendants;

(2)   Dismiss Plaintiffs' Amended Complaint in its entirety as against UHS of Delaware, Inc., Universal Health Services, Inc. for failure to produce any evidence including expert opinions against them including failure to pierce the corporate veil;

(3) Dismiss Count I (Negligence, Gross Negligence and Recklessness) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health for failure to produce any evidence including expert opinions against Moving Defendants;

(4) Dismiss Count IV (Breach of Fiduciary Duty) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health;

(5) Dismiss Count V (Negligent Infliction of Emotional Distress) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health;

(6) Dismiss Count VI (Assault and Battery) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health;

(7) Dismiss Count VII (Intentional Infliction of Emotional Distress) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health;

(8) Dismiss Counts II and III (Rehabilitation Act and ADA) against UHS of Delaware, Inc., Universal Health Services, Inc. and Foundations Behavioral Health for failure to offer any evidence whatsoever as to these claims against Moving Defendants.

Defendants rely on the accompanying Brief as grounds to support this motion. Because of the complexity of the issues involved, and the dispositive nature of this Motion, Defendants request oral argument.

Respectfully submitted,

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

*Paul F. Laughlin*
By: _____
Paul F. Laughlin, Esquire
pflaughlin@mdwcg.com
Donna M. Modestine, Esquire
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
610-354-8283
dmmodestine@mdwcg.com
*Counsel for Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M. Fusco, Psy. D, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN C. and THERESA C., Individually and as
parents and Natural Guardians of B.C.

v.

FOUNDATIONS BEHAVIORAL HEALTH,
a/k/a UHS OF DOYLESTOWN, LLC;
UHS OF DELAWARE, INC.; UNIVERSAL
HEALTH SERVICES, INC.; GINA M. FUSCO,
PSY.D.; ANTHONY CUSATE; WENDY
MONTE; DANA BACHMAN; DONNA
NEWTON-PUTIGNANO;
AMY DOLLINGER; TIM (LAST NAME
UNKNOWN); BERNARD OTABIL; and
UNKNOWN EMPLOYEES

2:20-cv-06431-WB

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THE MOTION
FOR SUMMARY JUDGMENT OF DEFENDANTS, UHS OF DOYLESTOWN, LLC
D/B/A FOUNDATIONS BEHAVIORAL HEALTH, UHS OF DELAWARE, INC.,
UNIVERSAL HEALTH SERVICES, INC., GINA M. FUSCO, PSY. D., ANTHONY
CUSATE, WENDY MONTE, DANA BACHMAN, DONNA NEWTON-PUTIGNANO,
AND AMY DOLLINGER**

1. B.C. is an individual who suffers from severe autism and is non verbal. *See* Plaintiffs'
   Amended Complaint Docket Number 31 at ¶ 2. BATES 0027.
2. Prior to his admission at Foundations Behavioral Health (hereinafter "Foundations"),
   B.C. was exhibiting behaviors consisting of: increased aggression with severe anxiety,
   issues with sleep, and obsession with feces. BATES 0102, 0105, 0108.
3. On October 30, 2018, B.C. was seen for a psychiatric evaluation with Dr. Srinivasan for
   increased anger and aggression, during which B.C.'s parents stated that B.C. had recently
   become more worried about separation from his family or his family leaving him. Dr.
   Srinivasan's diagnoses included Autism and Mood Disorder, not otherwise specified. *See*
   Treatment Records of Dr. Shankar Srinivasan; Part I.  BATES 0175-0178
4. Additionally, during his visit with Dr. Srinivasan, it was noted that B.C. had a history of
   insomnia and was taking Melatonin for it.  Treatment Records of Dr. Shankar Srinivasan;
   Part I.  BATES 0175-0178.
5. On December 31, 2018, Dr. Srinivasan saw B.C. again, and it was reported that B.C. was
   exhibiting worse rage and aggression since *his last visit* and had attacked his family.
   Treatment Records of Dr. Shankar Srinivasan; Part I. BATES 0160-0164.  His triggers
   were noted as including instances when he could not be with his brother, given his
   apparent obsession with his younger sibling. Dr. Srinivasan specifically noted that
   voluntary admission for in-patient treatment was to be considered if the violent behavior
   was ongoing.  Treatment Records of Dr. Shankar Srinivasan; Part I.  BATES 0160-0164.

6. Upon B.C.'s psychiatric evaluation, both B.C.'s mother and father reported that B.C. had progressively been having increases in agitation and aggression. *See* Treatment Records of Dr. Shankar Srinivasan; Part II; BATES 0160-0164.

7. On January 5, 2019, B.C.'s parents called 911 because of B.C.'s worsening aggressive behavior, which included crying, kicking, and B.C. grabbing his father's neck. *See* Theresa Collin's Deposition Transcript BATES 0290; *See* Kevin Collin's Deposition Transcript BATES 0402-0494.

8. When the police arrived in response to B.C.'s parent's call, B.C. was taken by the police to Saint Claire's Hospital. *See* Theresa Collin's Deposition BATES 0294-0296; *See also* Saint Claire's Hospital Medical Records BATES 0445-0449.

9. While at Saint Claire's Hospital, B.C. was restrained with four point restraints and was administered Thorazine. *See* Saint Claire's Hospital Medical Records BATES 0443 and 0456.

10. B.C. was discharged by Saint Claire's Hospital and sent to Foundations for a higher level of care. *See* Saint Claire's Hospital Medical Record BATES 0443.

11. B.C. was admitted to Foundations on January 7, 2019 for in-patient treatment. *See* Foundations Records at FBH BATES 0101-0104.

12. At the time of his admission to Foundations, B.C. was a 17 year old with diagnoses consisting of: IED (Intermittent Explosive Disorder), Rule out Bipolar Disorder, History of ASD (Autism Spectrum Disorder), Rule out ID (intellectual disability?) severe, status post bilateral front temporal lobe atrophy since early childhood, and lactose intolerance. Foundations Records at BATES 0101-0104.

13. At the time of his admission to Foundations, B.C. was noted as having aggressive behaviors consisting of: aggressive behaviors, which escalate quickly with difficulty getting him regulated, where he attempts to strangle his parents, kicking, screaming, grabbing hair, and throwing objects. *See* Foundations Records at FBH BATES 0102.

14. Upon his admission to Foundations, it was noted that if a family member left the area the patient was in or when they went home his aggressive behavior was immediately triggered and other sources of agitation included transitioning, loud noises and being in a closed room. *See* Foundations Records at FBH BATES 0108.

15. Foundations has 24/7 non-monitored video footage. *See* Deposition Transcript of Amy Dollinger BATES 1258-1260.

16. On January 9, 2019, video footage captured an interaction between Bernard Otabil and B.C. *See* Foundations Video Footage Clip from January 9, 2019; *See also* Bernard Otabil Deposition Transcript BATES 1714.

17. On January 9, 2019, Bernard Otabil was an employee of Foundations. *See* Bernard Otabil Employment File BATES 1556-1560.

18. Prior to his employment, he was cleared of all background checks including that of child abuse. *See* Bernard Otabil Employment File BATES 1517-1524, 1531-1537.

19. At the time he was hired, he underwent a week long training. *See* Deposition Transcript of Bernard Otabil BATES 1692; *See also* Bernard Otabil Employment File BATES 1551.

20. Prior to January of 2019, Bernard Otabil had never been convicted of or accused of child abuse or neglect. *See* Deposition Transcript of Bernard Otabil BATES 1753; *See also* Bernard Otabil Employment File BATES 1517-1524, 1531-1537.

21. On January 15, 2019 Foundations was made aware of the actions of Bernard Otabil via contact from the Central Bucks Regional Police Department and Bucks County Children

and Youth in reference to an investigation into the actions of Bernard Otabil on January 9 and 11 of 2019. *See* Police Report BATES 1775; *See also* Amy Dollinger Deposition Transcript BATES 1262-1265, 1331-1332.

22. Subsequent to and as a result of the January 9, 2019 incident, Bernard Otabil was terminated by Foundations for a policy violation. *See* Bernard Otabil Employment File BATES 1557.

23. On January 13, 2019, B.C. was transferred from Foundations to the Doylestown Hospital Emergency Room for a rash around the eye and inguinal/genital region and to rule out testicular torsion. *See* Doylestown Hospital Records BATES 1789.

24. B.C. was subsequently admitted to CHOP from the Doylestown Hospital Emergency Room with a splenic laceration and an unknown mechanism of injury. BATES 1804-1807..

25. On January 24, 2019, B.C. was discharged from CHOP. BATES 1804.

26. B.C. has had no urologic problems since being discharged from CHOP and has had no follow up urological care. *See* Theresa Collin's Deposition Transcript BATES 00339.

27. On September 2, 2020, Bernard Otabil was convicted of the crime of Harassment arising out of his interaction with B.C. that is at issue in this case. *See* Criminal Trial Transcript BATES 1486-1487.

28. Bernard Otabil has a bachelor's degree in computer science from West Chester University and presently, he lives with his wife and child in Ohio. *See* Bernard Otabil Deposition Transcript BATES 1671, 1676.

29. On December 22, 2020, Plaintiffs commenced this action by way of filing a Complaint in the United States Eastern District of Pennsylvania. *See* Plaintiffs' Complaint at Docket Entry 1. BATES 0001-0025.

30. On March 18, 2021, Plaintiffs filed an Amended Complaint subsequent to this Honorable Court's Order granting Plaintiffs' Request for Leave to File an Amended Complaint. *See* Plaintiffs' Amended Complaint at Docket Entry 31 BATES 0026-0059.

31. On June 20, 2023, Defendants, Dana Bachman, Anthony Cusate, Amy Dollinger, Foundations Behavioral Health, Gina M Fusco, Wendy Monte, and Donna Newton-Putignano filed an Answer to Plaintiffs' Amended Complaint denying all allegations of negligence. *See* Answer to Plaintiffs' Amended Complaint at Docket Entry 51. BATES 0060-0074.

32. On June 22, 2023, Defendant, Universal Health Services, Inc. filed an Answer to Plaintiffs' Amended Complaint denying all allegations of negligence. *See* Answer to Plaintiffs' Amended Complaint at Docket Entry 52. BATES 0075-0086.

33. On June 26, 2023, Defendant, UHS of Delaware, Inc., filed an Answer to Plaintiffs' Amended Complaint denying all allegations of negligence. *See* Answer to Plaintiffs' Amended Complaint at Docket Entry 53. BATES 0087-0100.

34. On September 28, 2021, B.C.'s mother, Theresa Collins, was deposed. *See* Deposition Transcript of Theresa Collins. BATES 0197-0380.

35. On September 28, 2021, B.C.'s father, Kevin Collins, was deposed. *See* Deposition Transcript of Kevin Collins. BATES 0381-0438.

36. On November 2, 2021, Anthony Cusate, the Director of Inpatient Services and Social Work for Foundations during B.C.'s admission, was deposed. *See* Answer to Amended Complaint at Docket Entry 51 BATES 0060-0074; *See also* Deposition Transcript of Anthony Cusate. BATES 0609-0706.

37. On November 9, 2021, Amy Dollinger, the Director of Compliance and Physician Relations for Foundations, was deposed. *See* Answer to Amended Complaint at Docket Entry 51 BATES 0060-0074;  *See also* Deposition Transcript of Amy Dollinger BATES 1223-1423.

38. On December 2, 2021, Dana Bachman, the Assistant Chief of Nursing during B.C.'s admission, was deposed. *See* Answer to Amended Complaint at Docket Entry 51 BATES 0060-0074;  *See also* Deposition Transcript of Dana Bachman BATES 0913-1222.

39. On November 3, 2021, Bernard Otibal was deposed.  *See* Deposition Transcript of Bernard Otabil BATES 1657-1765

40. On November 2, 2021, Donna Putignano, Director of Behavioral Services was deposed. *See* Answer to Amended Complaint at Docket Entry 51 BATES 0060-0074;  *See also* Deposition Transcript of Donna Putignano  BATES 0820-0912.

41. On October 28, 2021, Wendy Monte, Primary Therapist/Behavioral Therapist was deposed.  *See* Answer to Amended Complaint at Docket Entry 51 BATES 0060-0074; *See also* Deposition Transcript of Wendy Monte bates 0707-0819.

42. On November 9, 2021, Gina Fusco, CEO was deposed. *See* Answer to Amended Complaint at Docket Entry 51 BATES 0060-0074;  *See also* Deposition Transcript of Gina Fusco BATES 0464-0605.

Respectfully submitted,

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

*Paul F. Laughlin*

By: _____

Paul F. Laughlin, Esquire
Donna M. Modestine, Esquire
620 Freedom Business Center, Suite 405
King of Prussia, PA 19406
610-354-8283
pflaughlin@mdwcg.com
*Counsel for Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M. Fusco, Psy, D,  Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, Amy Dollinger and Jon Lyford*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN C. and THERESA C., Individually and as parents and Natural Guardians of B.C. | : | |
| | : | |
| v. | : | 2:20-cv-06431-WB |
| | : | |
| FOUNDATIONS BEHAVIORAL HEALTH, a/k/a UHS OF DOYLESTOWN, LLC; UHS OF DELAWARE, INC.; UNIVERSAL HEALTH SERVICES, INC.; GINA M. FUSCO, PSY.D.; ANTHONY CUSATE; WENDY MONTE; DANA BACHMAN; DONNA NEWTON-PUTIGNANO; AMY DOLLINGER; TIM (LAST NAME UNKNOWN); BERNARD OTABIL; and UNKNOWN EMPLOYEES | : | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and the other authorities set forth in the accompanying Brief, Moving Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc. and Gina M. Fusco, Psy. D, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger [collectively "Individual Defendants"], by and through their counsel, Marshall Dennehey Warner Coleman and Goggin, hereby seek an order granting summary judgment as to the Moving Defendants, with prejudice.

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................... ii

I.    Introduction ..................................................................................................................... 1

II.   Statement of facts ........................................................................................................... 2

    A.   Initiation of lawsuit and Amended Complaint ......................................................... 2

    B.   Motion to Dismiss Amended Complaint and Third Circuit appeal ......................... 3

III.  STANDARD OF REVIEW ............................................................................................ 3

I.    Moving DefendaNTS are entitled to summary judgment as to plaintiffs' state law claims in
Counts I, IV and V .................................................................................................................. 4

    A.   Allegations of negligence against the Moving Defendants in the Amended Complaint
    and Count I ........................................................................................................................ 6

    B.   The Individual Defendants are entitled to summary judgment as to Count I (Negligence,
    Gross Negligence And Recklessness) .............................................................................. 8

    C.   Defendants, FBH, UHSI and UHSD, are entitled to summary judgment as the state law
    claims in Counts I, IV and V ........................................................................................... 15

        1.   FBH, USHI or USHD are entitled to summary judgment as to Count I, Negligence,
        Gross Negligence, and Recklessness ....................................................................... 16

        2.   Defendants, FBH, USHI and USHD are entitled to summary judgment as to Count
        IV, Breach of Fiduciary Duty .................................................................................. 19

        3.   Defendants, FBH, USHI and USHD are entitled to summary judgment as to Count V,
        Negligent Infliction of Emotional Distress .............................................................. 21

II.   Defendants Universal Health Services, Inc. and UHS of Delaware, Inc. are entitled to
summary judgment as to all claims BECAUSE there is no evidence to SUPPORT piercING the
corporate veil ......................................................................................................................... 23

    A.   UHSI and UHSD are not liable for any conduct on behalf of the facility, FBH ............ 23

    B.   Plaintiffs fail to allege that the corporate veil should be pierced, nor does the evidence
    support such a claim ......................................................................................................... 24

    C.   Plaintiffs Have Failed to Produce any Evidence of Direct or Vicarious Liability. ........ 25

III.  FBH, USHI and USHD are entitled to Summary Judgment as to the "vicarious" claims,
for Assault and Battery (Count VI) and Intentional Infliction of Emotional Distress (Count VII)
      27

    A.   The Defendants, FBH, USHI and USHD are entitled to summary judgment as to Count
    VI, Assault and Battery ..................................................................................................... 28

    B.   The Defendants, FBH, UHSI and USHD are entitled to summary judgment as to Count
    VII, Intentional Infliction Of Emotional Distress ............................................................ 28

    C.   Plaintiffs cannot establish a claim against the Defendants for vicarious liability for
    Otabil's conduct ................................................................................................................ 30

IV.   Conclusion ..................................................................................................................... 33

i

## TABLE OF AUTHORITIES

Cases

*Albright v. Abington Memorial Hospital*, 696 A.2d 1159, 1164 (Pa. 1997)( ............................ 5, 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). ............................................. 3

*Bloom v. Dubois Reg'l Med. Ctr.*, 597 A.2d 671, 679 (Pa. Super. 1991). ................................. 5

*Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. 2000). ........................... 22

*Brown v. Phila. Coll. of Osteopathic Med.*, 760 A.2d 863, 868 (Pa.Super. 2000)( ..................... 14

*Brown v. Rivello*, 4:22-CV-01155, 2022 WL 17978798, at *4 (M.D. Pa. Dec. 28, 2022); .......... 29

*Brown v. Waxford*, 3:19-CV-00839, 2022 WL 2759064, at *11 n. 125 (M.D. Pa. July 14, 2022); ........................................................................................................ 29

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). ...................................................... 3

*Checchio v. Frankford Hospital*, 717 A.2d 1058, 1062 (Pa. Super. 1998)( .............................. 12

*Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc.*, 360 A.2d 200, 207 (Pa. 1976). ............................................................................................................. 24

*Commonwealth Dept. of Transp. v. E–Z Parks, Inc.* 153 Pa.Cmwlth. 258, 620 A.2d 712, 717 (1993) .............................................................................................. 20

*Commonwealth v. Rabold*, 951 A.2d 329 (Pa. 2008) ..................................................... 5

*Conquest v. WMC Mortgage Corp.*, 247 F. Supp. 618, 633 (E.D. Pa. 2017) ......................... 23

*Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. 1998)), ........................... 30

*DelphX Corp. v. Fondren*, 600 F. Supp. 3d 540, n. 44 (E.D. Pa. 2022)( .............................. 24

*Doe v. Phila. Cmty. Health Alts. Aids Task Force*, 745 A.2d 25, 27 (Pa. Super.. 2000), *aff'd*, 564 Pa. 264, 767 A.2d 548 (Pa. 2001); ........................................................... 22

*Douris v. Dougherty*, 192 F.Supp.2d 358, 368 (E.D. Pa. 2002)( ...................................... 27

*Downey v. Crozer-Chester Med. Ctr.*, 817 A.2d 517, 525-526 (Pa. Super. 2003)( ................ 6, 12

*Durnell v. Foti*, No. 19-2972, 2019 WL 5893263, at *5 (E.D. Pa. Nov. 12, 2019), .................. 17

*eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. 2002) ........................... 20

*Farago v. Sacred Heart Gen. Hosp.*, 562 A.2d 300 (Pa. 1989)( ......................................... 5

*First v. Zem Zem Temple*, 686 A.2d 18 (Pa.Super. 1996); ............................................... 14

*Fitzgerald v. McCutcheon*, 410 A.2d 1270 (Pa. Super. 1979). ........................................... 30

*Fugarino v. Univ. Servs.*, 123 F. Supp. 2d 838 (E.D. Pa. 2000). ...................................... 29

*Garcyznski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505(E.D. Pa. 2009). ................ 26

*Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392 (M.D. Pa. 2019). ................................ 27

*Hancock v. Friends Hospital, et al.*, 120 A.3d 1049 (Pa. Super. 2015). ................................. 6

*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454 (E.D. Pa. 2014). .......................... 22

*Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 997)........................................12

*Hoy v. Angelone*, 691 A.2d 476 (Pa. Super. 1997). ........................................... 29

*Ismail v. Dominion Energy, Inc.*, Civ. A. No. 19-1093, 2022 WL 990843 (E.D. Pa. Apr. 1, 2022) ........................................................................................ 24

*K.H. v. Kumar*, 122 A.3d 1080 (Pa. Super. 2015), .......................................... 25

*Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 9881 (Pa. 1987)) ................... 29

*Kennedy v. Butler Mem'l Hosp.*, 901 A.2d 1042 (Pa. Super. 2006). ....................... 17

*Kenner v. Kappa Alpha Psi Fraternity*, Inc., 808 A.2d 178 (Pa. Super. 2002) ......... 12

*Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 WL 2696467 (W.D. Pa. June 16, 2010). ...................................................................................... 26

*Kiehl v. Action Mfg. Co.*, 535 A.2d 571 (Pa. 1987) ......................................... 24

*Kovalev v. Walmart Inc.*, CV 22-1217, 2022 WL 16536230, at *5 (E.D. Pa. Oct. 28, 2022)......22

*Lambert v. Soltis*, 221 A.2d 173 (Pa. 1966)................................................. 12

*Leight v. Univ. of Pittsburgh Physicians*, 243 A.3d 126 (Pa. 2020) ...................... 4

*Lexington Ins. Co. v. Western Pa. Hosp.*, 423 F.3d 318 (3d Cir. 2005). ................... 4

*Lockhoff v. Slonaker*, 2017 WL 2423790 (E.D. Pa. Jun. 5, 2017).......................... 31

*Lumax Indus. v. Aultman*, 669 A.2d 893 (Pa. 1995). ......................................... 24

*Lunn v. Boyd*, 169 A.2d 103, 104-105 (Pa. 1961) ............................................. 30

*McDermott v. Party City Corp.*, 11 F.Supp.2d 612 (E.D. Pa. 1998) ......................... 20

*McMahon v. Health Mgmt. Assocs., Inc.*, No. 2:05-cv-90-FtM-99SPC, 2007 WL 9718526 (M.D. Fla. Feb. 14, 2007) ......................................................... 27

*McMaster v. Reale*, 110 A.2d 831 (Pa. Super. 1955) ........................................ 31

*MicroStrategy Inc. v. Acacia Research Corp.*, No. Civ. A. 5735-VCP, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010)( .................................................................. 24

*Mills v. City of Harrisburg*, 589 F. Supp. 2d 544 (M.D. Pa 2008). ........................ 28

*Nathanson v. Med. Coll. of Pennsylvania*, 926 F.2d 1368 (3d Cir. 1991)( ................ 27

*Nelson v. Loftus*, CV 17-3247, 2019 WL 175127 (E.D. Pa. Jan. 11, 2019) .................. 30

*Patroski v. Ridge*, No. 2:11-cv-1065, 2011 WL 4955274 (W.D. Pa. Oct. 18, 2011)( ......... 24

*Paves v. Corson*, 801 A.2d 546 (Pa. 2002). ................................................. 20

*Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001)); ......................... 23

*Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 (3d Cir. 2020)( ........... 3

*Potter Title & Trust Co. v. Knox*, 113 A.2d 549 (Pa. 1955) ................................ 31

*Potts v. Step By Step, Inc.*, 26 A.3d 1115 (Pa. Super. 2011)............................... 19

*Sarin v. Magee*, 333 F. Supp. 3d 475 (E.D. Pa. 2018)( ................................................ 31

*Scampone v. Grane Healthcare Co.*, 169 A.3d 600 (Pa. Super. 2017) ....................................... 15

*Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582 (Pa. 2012) ....................................... 25

*Stone v. Troy Constr., LLC*, 935 F.3d 141 (3d Cir. 2019)). ................................................ 3

*Strickland v. University of Scranton*, 700 A.2d 979 (Pa. Super. 1997). ....................................... 29

*Thompson v. Nason Hosp.*, 591 A.2d 703 (Pa. 1991). ....................................................... 17

*Toney v. Chester Cty. Hosp.*, 961 A.2d 192 (Pa. Super. 2008) ............................................. 22

*Toogood, v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140 (Pa. 2003); .................................... 12

*Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521 (D. Del. 2008); ........................................... 24

*United States v. Bestfoods*, 524 U.S. 51 (1998)) ....................................................... 23

*Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214 (Pa. 2018) ..................................... 26

*Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202 (Pa. Super. 2012). ..................................... 20

*Welsh v. Bulger*, 698 A.2d 581 (Pa 1997) ....................................................... 12, 16

*Wilson v. American Gen. Fin. Inc.*, 807 F. Supp. 2d 291 (W.D. Pa. 2011)( ............................... 29

*Winschel v. Jain*, 925 A.2d 782 (Pa.Super.2007). ....................................................... 25

Statutes

29 U.S.C. § 794 ....................................................................................... 26

42 U.S.C. §§ 12101 ................................................................................... 27

50 P.S. § 7114 .................................................................................. 5, 14, 19

50 P.S. §§ 7101-7114 ................................................................................. 1

50 P.S. §§ 7102, 7114 ................................................................................ 4

Pa. C.S.A. §7103 ..................................................................................... 5

Rules

Fed. R. Civ. P. 56 (a). ................................................................................ 3

## I.     INTRODUCTION

Plaintiffs' son B.C. has severe Autism Spectrum Disorder and is non-verbal with a history of concerning, aggressive, and self-destructive behaviors.  Amended Complaint.  (Doc. 31, ¶¶ 2, 26–28, 66; BATES 0027, 0031, 0036-0037.)  He was admitted emergently to a hospital crisis unit, and thereafter transferred to Foundations Behavioral Health ("FBH"), operated by Defendant UHS of Doylestown, LLC.  (Id., ¶¶ 29–31, 34, 66; BATES 0031-0032, 0036-0037).  Plaintiffs allege that while at FBH, Defendant Bernard Otabil, identified as a mental health technician, struck and pushed B.C., which conduct was unauthorized, outside the scope of his employment and for which he was terminated, charged criminally, and convicted. (Doc. 31, ¶¶ 44-53, 55; BATES 0033, 0035).  Plaintiffs thereafter commenced the instant matter.

All Defendants are entitled to immunity under the Mental Health Procedures Act ["MHPA"].  50 P.S. §§ 7101-7114.  Moving Defendants are also entitled to summary judgment as a matter of law because Plaintiffs have failed to produce any expert reports in support of their claims, which are required in a medical professional liability action to establish the applicable standard of care, any alleged deviation in the standard of care, and a causal connection between any alleged deviation and the alleged harm.  Since there are no expert reports or other evidence to support Plaintiffs' claim, there is no basis for liability on the part of Moving Defendants and they are entitled to summary judgment as a matter of law.  Moving Defendants also cannot be held vicariously liable for Otabil's acts for which he was criminally convicted, which are indisputably outside of the scope and authority of his employment.

Moving Defendants respectfully request this Honorable Court grant the instant motion for summary judgment, and dismiss all claims set forth against Moving Defendants in Plaintiffs' Amended Complaint, with prejudice.

1

## II.      STATEMENT OF FACTS

### A.      Initiation of lawsuit and Amended Complaint

Plaintiffs Kevin C. and Theresa C. brought this lawsuit against the Defendants, UHS of Doylestown, L.L.C. d/b/a Foundations Behavioral Health ["FBH"] the licensed operator of the psychiatric hospital known as FBH, entity UHS of Delaware, Inc. ["UHSD"] and entity Universal Health Services, Inc. ["UHSI"] and individuals Gina M. Fusco, Psy. D, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, Amy Dollinger ["Individual Defendants"], and Bernard Otabil. (Doc. 31). Defendants Jon Lyford and Dr. Mohammedyusuf Modan, M.D. have since been dismissed. Plaintiffs assert that the individually named Defendants are personally liable for the subject incident. (Doc. 31, Count I; *see also e.g.*, ¶¶ 8, 10, 12-15; BATES 0028-0029).

The Amended Complaint asserts state law claims against all Moving Defendants for Negligence, Gross Negligence, and Recklessness (Count I). (Doc. 31, ¶¶ 83-104; BATES 0039-0044). Additional state law claims are asserted against UHSD and UHSI for Breach of Fiduciary Duty, Negligent Infliction of Emotional Distress, and for the state law intentional torts of Assault and Battery and Intentional Infliction of Emotional Distress (Doc. 31). Plaintiffs also asserted claims against UHSD, UHSI and FBH under Section 504 of the Rehabilitation Act of 1973, PL 93-112, 87 Stat. 355 (Sept. 26, 1973), and the Americans with Disabilities Act of 1990, 104 Stat. 328, 42 U.S.C. §§ 12101, *et seq*,. Plaintiffs' damages claims include requests for compensatory, declarative and injunctive relief, punitive damages and attorneys fees and costs. (Doc. 34, BATES 0056-0057). Moving Defendants have filed Answers to the Amended Complaint denying all material allegations. (ECF 50-53).

2

B.    Motion to Dismiss Amended Complaint and Third Circuit appeal

On February 23, 2021, Moving Defendants filed a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss (Doc. 23) which was dismissed as moot (Doc. 33) due to Plaintiffs Amended Complaint. (Doc. 31).  On April 1, 2021, Defendants filed a Motion to Dismiss the Amended Complaint. (Doc. 34).  Moving Defendants filed a collateral order appeal to the Third Circuit on September 21, 2021 (Doc. 43); however, on May 4, 2023, Third Circuit Court dismissed the appeal for lack of jurisdiction. (*See* Doc. 47).

III.    STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (a).  Only "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A factual dispute is genuine if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party'", and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020)(quoting *Anderson*, 477 U.S. at 248).  The court must "view all 'the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Physicians Healthsource*, 954 F.3d at 618 (quoting *Stone v. Troy Constr., LLC*, 935 F.3d 141, 147 n.6 (3d Cir. 2019)).  Where the nonmoving party bears the burden of proof at trial on a dispositive issue, a summary judgment motion may rely solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Once the moving party meets this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* If the evidence from the nonmoving party is "merely colorable" or "not significantly

3

probative,...summary judgment may be granted." *See Anderson*, 477 U.S. at 249-50. A nonmovant's beliefs, assumptions and/or speculations cannot defeat summary judgment. *Lexington Ins. Co. v. Western Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005). When nonmovant has the burden of proof on an issue, the moving party may discharge its burden by showing the absence of evidence supporting the nonmoving party's case. *Celotex,* 477 U.S. at 325. Discovery has been concluded in this matter and it is ripe for summary judgment.

<u>ARGUMENT</u>

I.    MOVING DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFFS' STATE LAW CLAIMS IN COUNTS I, IV AND V

All Moving Defendants are entitled to summary judgment as a matter of law as to Plaintiffs' state law claims in Count I (Negligence, Gross Negligence And Recklessness), and Defendants, USHI, USHD and FBH are entitled to summary judgment as a matter of law as to Count IV (Breach Of Fiduciary Duty) and Count V (Negligent Infliction Of Emotional Distress). There are no issues of material fact because Plaintiffs have failed to adduce any evidence, during the course of discovery to support their claims against Moving Defendants. There is simply no evidence that Defendants' alleged acts or omissions were negligent, let alone grossly negligent (or engaged in willful misconduct) as required to defeat the immunity conferred by the MPHA.

The MHPA "protects from civil and criminal liability those individuals and institutions that provide treatment to mentally ill patients" to promote its purpose to assure "the availability of adequate treatment to those who are mentally ill." *Leight v. Univ. of Pittsburgh Physicians*, 243 A.3d 126, 130 (Pa. 2020), citing 50 P.S. §§ 7102, 7114. The immunity provision in Section 7114 states:

> (a) *In the absence of willful misconduct or gross negligence,* a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that

4

> a person be discharged, or placed under partial hospitalization,
> outpatient care or leave of absence, or that the restraint upon such
> person be otherwise reduced, or a county administrator or other
> authorized person who denies an application for voluntary
> treatment or for involuntary emergency examination and treatment,
> *shall not be civilly or criminally liable for such decision or for*
> *any of its consequences.*

50 P.S. § 7114 (emphasis added). This Court has acknowledged that "Defendants contend, and Plaintiffs do not dispute, that the MHPA applies to each Defendant in this case." (Doc. 40, p. 9 n. 6; *see* Doc. 37-1, p. 10 (Plaintiffs acknowledging that MHPA applies); *see also Farago v. Sacred Heart Gen. Hosp.*, 562 A.2d 300, 303 (Pa. 1989)(MHPA immunity provision "encompass[es] organizational entities, including corporations, partnerships and associations as well as natural persons.")[1]

Gross negligence for purposes of the MHPA, is "a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference," and requires that a defendant's behavior "be flagrant, grossly deviating from the ordinary standard of care." *Bloom v. Dubois Reg'l Med. Ctr.*, 597 A.2d 671, 679 (Pa. Super. 1991). The issue of whether a particular set of facts satisfies the definition of gross negligence may be decided by the Judge as a matter of law, where, as here, "the case is entirely free from doubt, and no reasonable jury could find gross negligence." *See Albright v. Abington Memorial Hospital*, 696 A.2d 1159, 1164 (Pa. 1997)(citations omitted)(hospital's judgment to not admit mentally ill patient did not

---

[1] The Complaint alleges that B.C. has severe Autism Spectrum Disorder and is non-verbal with a history of concerning, aggressive, and self-destructive behaviors. Amended Complaint. (Doc. 31, ¶¶ 2, 26–28, 66; BATES 0027, 0031, 0036-0037). It is beyond dispute that the MHPA applies to treatment for individuals with autism spectrum disorder. *Commonwealth v. Rabold*, 951 A.2d 329 (Pa. 2008) (MHPA hearing properly invoked following jury's verdict of guilty but mentally ill, for an individual it with autism); *cf. DeJesus v. U.S. Dep't of Veterans Affairs*, 479 F.3d 271, 284 (3d Cir. 2007)(MHPA applies to residential treatment provided to someone who engages in "discrete incidents of either destruction or violence...disproportionate to the stimulus"). B.C. qualified as an intellectually mentally disabled person as his own psychiatrist (and proposed expert) Dr. Srinivasan diagnosed B.C with mood disorder not otherwise specified in addition to autism, and because B.C. was an inpatient at FBH where he received treatment and/or services as contemplated by the MHPA. *See* 50 Pa. C.S.A. §7103. The Mental Health and Intellectual Disability Act of 1966 (MHIDA) contains similar immunity provisions to which BC's autism would apply.

rise to level of gross negligence where patient died as result of a fire she was thought to have started); *Downey v. Crozer-Chester Med. Ctr.*, 817 A.2d 517, 525-526 (Pa. Super. 2003)(failure to supervise mentally ill patient who drowned while bathing did not rise to gross negligence); *Hancock v. Friends Hospital, et al.*, 120 A.3d 1049 (Pa. Super. 2015).   The judge has the ability to decide whether an act or failure to act constitutes gross negligence even where the facts are sufficient to establish ordinary negligence. *Albright*, 696 A.2d at 1164; *Downey*, 817 A.2d at 525-526.  This is because "requir[ing] mental health employees and their employers to defend jury trials on the issue of gross negligence where the trial judge finds as a matter of law that, at best, only ordinary negligence has been established, would gut the limited immunity provision of the Act of any meaning and unfairly subject such employees and facilities to protracted and expensive litigation." *Id.*  For the reasons set forth below, Moving Defendants are entitled to summary judgment as a matter of law as to Count I, in accordance with the immunity provisions in the MHPA, as there is no evidence that any actions and/or inactions by Moving Defendants rose to the level of gross negligence.

A.     Allegations of negligence against the Moving Defendants in the
        Amended Complaint and Count I

Plaintiffs largely and improperly set forth generalized allegations against "FBH" and "UHS" in their Amended Complaint without setting forth allegations as to the conduct of each individual defendant entity.  Plaintiffs set forth similar generalized allegations against the Individual Defendants (whom Plaintiffs call "the FBH defendants"), in "Parties" (Doc. 31,  ¶ 21; BATES 0030); the Factual Background  (Doc. 31, ¶¶ 37, 40-41, 43, 47-51, 54, 57, 59, 68, 75, 81-82; BATES 0032-0039); and Count I, ¶¶ 84-104; BATES 0040-0044).  Specifically, Plaintiffs' generalized allegations include that: B.C. was not monitored every 15 minutes "but was instead

6

locked in his room alone and in the dark for hours at a time"[2] (¶ 40-41; BATES 0033); B.C.'s room was "situated near a nurse's station where FBH employees gathered" (¶ 42; BATES 0033); "the location of B.C.'s room allowed for certain activities involving B.C. to be captured on the surveillance system inside FBH" (¶ 42; BATES 0033); B.C. "was treated violently" by mental health technician Otabil (¶¶ 44-47; BATES 0033-0034); "did not monitor their camera system which would have revealed the abuse" (¶¶ 48-49; BATES 0034); "Otabil's actions were taken in full view of fellow FBH employees" who did not intercede or "render aid to B.C." (¶¶ 52-53, 56; BATES 0034-0035). Not once do the Plaintiffs attribute any alleged negligent conduct to Defendants UHSI or UHSD.

In Count I, Plaintiffs further assert improper generalized allegations that UHS, FBH and the Individual Defendants "breached their duty to adequately hire, train, supervise, and discipline its staff and its program" (¶ 85-86; bates 0040); "owed B.C. a duty of care to prevent the conduct alleged" and "should have anticipated that injury to B.C...would likely result from the foregoing conduct" (¶ 87; bates 0040-0041); "employees of FBH, were inadequately trained and supervised, and were unfit and incompetent for their positions" (¶ 88; bates 0041) which Defendants "should have known", and "that the level and quality of staffing provided for B.C" was insufficient and that "officers were...potentially dangerous to disabled persons"; and "FBH employees such as Otabil were abusing FBH residents, including B.C." (¶89; bates 0041). Count I further alleges that Defendants "proximately and foreseeably" caused B.C.'s injuries through their alleged failure to "appropriately supervise B.C.'s program, to appropriately hire,

---

[2] It has been confirmed through discovery that none of the residents doors at FBH are locked from the inside and residents may get out of their rooms at any time. *See* Dana Bachman Deposition Transcript at BATES 0047 (The doors lock from the inside so a patient is always able to get out of their room); *See also* Gina Fusco Deposition Transcript at BATES 0577-0579 (Doors only lock from outside and the patient is always able to open the door from the inside).

train and supervise its staff at FBH, to ensure that an alleged number of trained staff were present at all times, and to develop and maintain a safe and appropriate residential program for B.C." (¶ 90; bates 0041). Plaintiffs allege that Defendants' conduct "constitute[d] negligence, gross negligence and recklessness", was "outrageous and or done willfully, wantonly, and/or with reckless indifference" and proximately caused B.C.'s injuries (¶¶ 91-92; BATES 0041-0042); that Defendants' negligence may be inferred under *res ipsa loquitor* (¶ 99; BATES 0043); their "abuse of B.C. constituted negligence *per se*" ( ¶ 101; BATES 0044); and the alleged harm was "the direct and proximate, and foreseeable results of Defendants' acts and omissions" (¶¶ 102-104; BATES 0044).

### B. The Individual Defendants are entitled to summary judgment as to Count I (Negligence, Gross Negligence And Recklessness)

The Individual Defendants, Gina Fusco, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger are entitled to summary judgment in their favor as to the state law claims of negligence, gross negligence and recklessness in Count I, the sole claims alleged against them. (Doc. 31, ¶¶83-104; BATES 0039-0044). Discovery is complete and there is no opinion evidence or other evidence to establish a *prima facie* case, including that any Individual Defendant was negligent, much less grossly negligent as is necessary to overcome their immunity under the MHPA.

As set forth above, the Amended Complaint largely asserts conclusory allegations against all Moving Defendants interchangeably, without specific allegations as to any of the Individual Defendants. Plaintiffs also lump the Individual Defendants themselves together as "FBH Defendants" (¶ 16; BATES 0029-0030), and they are differentiated only by their job titles, as the Chief Executive Officer, the Director of Admissions, the Director of Inpatient Services, a supervisor and case manager, the Senior Director of Behavioral Services, the Assistant Director

of Nursing, and the Director of Compliance. (Doc. 31, ¶¶ 8-10 & 12-16; BATES 0028, 0029-0030). Among the few allegations targeted at the Individual Defendants, are that "Otabil's actions were taken in full view of fellow FBH employees, none of which took any action to interceded or render aid to B.C." or intercede (¶¶ 52-53, 56; BATES 0034-0035); "FBH Defendants and employees, who were B.C.'s constant caretakers, caused B.C.'s injuries through abuse, or through extreme and reckless lack of care" (¶ 67; BATES 0037); and, "[i]mmediately prior to B.C.'s inpatient hospitalization at FBH, the FBH Defendants were no notice of...Otabil's propensity to harm patients of FBH and they took no steps to stop it." (¶ 75; *see* ¶¶ 74, 76-82 referring to a prior incident where the abuser was never identified; BATES 0038-0039).

At the most these allegations amount to negligence, not gross negligence. Even when the facts are viewed in the light most favorable to Plaintiffs, they have failed to produce the required expert opinion evidence or other evidence from which any Individual Defendant could be found to be negligent, let alone grossly negligent. Plaintiffs' claims against the Individual Defendants are also nothing more than regurgitated corporate negligent claims that they attempt to reassert through the leaders.

More specifically, the individuals depositions were conducted in this case. Gina M. Fusco, Psy.D. was, at the time of this incident, the Chief Executive Officer of FBH. In her deposition, Ms. Fusco testified that, on each shift the floor nurses would be responsible for the supervision of the mental health technicians on each unit. *See* Gina Fusco's deposition testimony BATES 0505. She would not be involved in the training of the mental health technicians or any direct supervisions of the mental health technicians and, at no time, did she provide hands on care to B.C. *Id;* BATES 00505.

9

Anthony Cusate was the Director of Inpatient Services and Social Work at FBH. Mr. Cusate also testified in his deposition that at no point would it be appropriate for a Mental Health Technician at FBH to slap, drag, strike, push, kick, and/or punch at patient. *See* Anthony Cusate's deposition testimony BATES 0658-0661.

Wendy Monte, M.S., LPC, BSL was a Primary Therapist/Behavioral Therapist at FBH. In her role at FBH, she was not responsible for supervising, training, hiring, firing or disciplining the mental health technicians. *See* Wendy Monte's Deposition testimony at BATES 0749-0750. She never participated in the direct care of B.C. during his admission to FBH. *Id.* at BATE 0752, 0782) She also confirmed that Mental Health Technicians should never shove, slap, push or drag a resident and they were never trained to do so. *Id.* at BATES 0800, 00803.

Donna Newton-Putignano, MS, BCBA was the Senior Director of Behavioral Services at FBH. According to her deposition testimony, Ms. Newton-Putignano would supervise the behavior specialists on the campus but would have no direct supervision of the mental health technicians including Bernard Otabil. *See* Donna Newton-Putignano's deposition testimony at BATES 00839. She also has never had any direct contact with B.C. during his admissions to FBH *Id.* at BATES 00842. Furthermore, in her deposition, she conceded that the mental health technicians are never trained to push, drag, hit or aggressively grab a resident by the arm. *Id.* at BATES 0855.

Dana Bachman, R.N. was the Assistant Chief of Nursing during B.C.'s admission. *See* Dana Bachman Deposition Transcript at BATES 0938-0939. The pushing and/or tapping of B.C.'s butt behaviors exhibited by Bernard Otabil are not behaviors that would be appropriate at and/or trained at FBH. *Id.* at BATES 0981-0982. Dana Bachman further testified that it is not appropriate for a Mental Health Technician, at FBH, to tap and/or spank a patient on their butt,

10

push a patient to the ground, or swing their arms aggressively around a patient, nor would it be appropriate to do the aforementioned behaviors in order to redirect a patient. *Id.* at BATES 0983-0985. Ms. Bachman was not involved in the training of Bernard Otabil. *Id.* at BATES 0963. Ms. Bachman did not train or supervise the training of Mental Health Technicians at FBH. *Id.* at BATES 0949-0950. Ms. Bachman was not responsible for managing Mental Health Technicians at FBH. *Id.* at BATES 0944.

Amy Dollinger was the Director of Compliance and Physicians Relations at FBH. When Ms. Dollinger performed her investigation into the Child line call following B.C.'s transfer, she found video clips of interactions between Mr. Otabil and B.C. that were inconsistent with facility policies and she immediately provided this footage to the police and Bernard Otabil was terminated. *See* Amy Dollinger's deposition testimony at BATES 1254, 1258. She also conceded that the conduct seen on the video surveillance is neither taught or acceptable at FBH. *Id.* at BATES 1258. During the criminal trial, Ms. Dollinger reiterated the fact the that FBH does not train its employees to used force within the facility. *Id.* at BATES 1250. It is never appropriate for an employee to strike, push or kick a resident. *Id.* at BATES 1251.

In her role as Director of Compliance at FBH, Amy Dollinger does not have any direct patient care responsibilities and does not supervise anyone with direct patient care responsibilities. *Id.* at BATES 1258.

As seen from the testimony above, there are no genuine issues of material fact precluding summary judgment on this record. There has been no testimony whatsoever which would prove the claims of negligence yet alone gross negligence against any of these individuals. The allegations contained in Plaintiffs' Amended Complaint are not supported by the record in this matter.

11

Furthermore, expert testimony is required to prove negligence on the part of the Defendants.[3] To state a prima facie cause of action for a medical malpractice claim under Pennsylvania law, "a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered and the damages suffered were a direct result of the harm." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997). It is well established that since matters related to standard of care and causation in the medical professional field are "not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood, v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003); *see Lambert v. Soltis*, 221 A.2d 173 (Pa. 1966)(expert testimony required to show dental malpractice case). The expert testimony requirement has been held equally applicable to corporate liability claims such that "a plaintiff must produce expert testimony to establish that the hospital deviated from an accepted standard of care". *Welsh v. Bulger*, 698 A.2d 581, 585 (Pa 1997). As such, Plaintiffs' claims in this case regarding selection, training and supervision of behavioral health staff, and other related claims must be supported by expert testimony.

Here, Plaintiffs have presented no expert evidence as to the applicable standard of care, that any of the Individuals, FBH, USHI or USHD deviated from the applicable standard, or that such deviation caused the alleged harm.

---

[3] "An expert's opinion must be supported by references to facts, testimony or empirical data and must delineate how the opinion, based on the record, gives rise to a genuine issue of material fact" and "[w]ithout such support, there can be no prima facie case of gross negligence sufficient to overcome a summary judgment motion." *Downey v. Crozer-Chester Med. Ctr.*, 817 A.2d 517, 528–29 (Pa. Super. 2003); *Kenner v. Kappa Alpha Psi Fraternity*, Inc., 808 A.2d 178 (Pa. Super. 2002) (summary judgment proper where expert failed to identify specific facts, testimony or empirical data for support), citing *Checchio v. Frankford Hospital*, 717 A.2d 1058, 1062 (Pa. Super. 1998)(summary judgment proper where expert opinion based on subjective assessments)).

More specifically, Plaintiffs have produced the reports of B.C.'s treating psychiatrist Dr.

Shankar Srinivasan. *See* the expert report of Dr. Shankar Srinivasan, dated October 20, 2020

BATES 1514. Dr. Srinivasan states in his report that Brian sustained an injury that required

extended medical treatment. He notes that, since that time, Brian appears to struggle with trauma

based symptoms "often seen in Post-Traumatic Stress Disorder, as he has heightened separation

anxiety, fear, flashbacks and worsening insomnia". He opines that Brian will need long term

treatment including medication and therapy. Despite Dr. Srinivasan's opinions about additional

treatment needed, no additional therapies have been ordered or initiated by Dr. Srinivasan and no

specific "long term treatment" modalities are mentioned in his report or treatment records.

Moreover, during her deposition, B.C.'s mother testified that B.C. has never been formally

diagnosed with PTSD by a physician. *See* Theresa Collin's Deposition Transcript at BATES

0278. Importantly, nowhere in Dr. Srinivasan's report does he opine as to the cause of injury or

any implications that B.C.'s alleged injuries were caused by any actions and/or inactions of the

Moving Defendants.

Plaintiffs have next produced the report of Dara Duryea, LCSW, B.C.'s family's social

worker. Ms. Duryea states in her report that she has been treating Brian since February of 2019

and has diagnose him with PTSD. Again, notwithstanding what is in her expert report, B.C.'s

mother testified that B.C. has never been formally diagnosed with PTSD by a physician. *See*

Theresa Collin's Deposition Transcript at BATES 0278. She claims that after these incidents,

Brian has been overly anxious if his family members are not at home and is not able to accept

any new situations and has been asked to leave school because of his PTSD. Interestingly, when

her treatment records and notes were subpoenaed she responded by stating that she does not keep

treatment records or notes only billing records. Again, in he report, she fails to comment on any

breach of the standard of care by any Defendant. *See* Dara Duryea, LCSW's Expert Report at BATES 1515. Plaintiffs have produced no expert reports specifically critical of any of the actions and/or inactions of the named Defendants.

Absent such expert testimony, there is no basis for liability on the part of Defendants, and a finder of fact would be precluded, as a matter of law, from finding liability against them. No expert or other evidence was adduced from which a reasonable jury could find any of the Defendants to be negligent or causally negligent, or grossly negligent. There was no evidence to find that any of the Defendants breached a duty owed to B.C., or that their "acts or omissions were a 'substantial factor' in bringing about the plaintiff's harm." *First v. Zem Zem Temple*, 686 A.2d 18, 21 (Pa.Super. 1996); *see Brown v. Phila. Coll. of Osteopathic Med.*, 760 A.2d 863, 868 (Pa.Super. 2000)(citations omitted)(regarding court's responsibility to "evaluate the alleged facts and refuse to find an actor's conduct the legal cause of harm when 'it appears to the court highly extraordinary that [the actor's conduct] should have brought about the harm.' ")

Finally, and most critically, the record is devoid of evidence of gross negligence - that any Individual Defendants' acts were "flagrant, grossly deviating from the ordinary standard of care", a determination that this Court can make based on the record. *See Bloom*, 597 A.2d at 679; *Albright*, 696 A.2d at 1164. As reflected by the deposition testimony of the Individual Defendants, as referenced above, the Individual Defendants did not have any direct involvement with B.C. and were not involved in the training of Bernard Otabil. Since there is no evidence of gross negligence, the Individual Defendants are immune from liability under the MHPA, 50 P.S. § 7114.

14

Individual Defendants, Gina Fusco, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger are entitled to summary judgment as to Count I, which represents all claims against them.

### C.    Defendants, FBH, UHSI and UHSD, are entitled to summary judgment as the state law claims in Counts I, IV and V

Like the Individual Defendants, FBH, UHSI and UHSD are entitled to summary judgment as to the state law claims in Count I (Negligence, Gross Negligence, and Recklessness), Count IV (Breach of Fiduciary Duty ) and Count V (Negligent Infliction of Emotional Distress), because Plaintiffs failed to produce any expert opinions or other evidence to support a *prima facie* case under any of these theories. *Id.*  There is absolutely no evidence that these FBH, UHSI, or UHSD were negligent, let alone grossly negligent (or willful misconduct), thus FBH, UHSI and UHSD are immune from liability under the MHPA.  [Plaintiffs' claims based upon the intentional torts of Assault and Battery (Count VI) and Intentional Infliction of Emotional Distress (Count VII) are addressed separately, *infra*].

Moreover, Plaintiffs have failed to produce any evidence to support a direct corporate negligence claim against UHSI or UHSD.  Specifically, there is no evidence that UHSI or UHSD owed a non delegable duty to the patient.  Only "the licensed owner and occupier," FBH, arguably owed a direct duty of care to its patients.  *See Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 620-621 (Pa. Super. 2017) ("Scampone III").  As a matter of public record, UHS of Doylestown, LLC was the licensed operator of the psychiatric hospital known as FBH, thus UHSD and UHSI may not be held liable for any direct duty of care owed to patients of FBH (nor vicariously liable).

15

1.    FBH, USHI or USHD are entitled to summary judgment as to
Count I, Negligence, Gross Negligence, and Recklessness

Again, Plaintiffs largely combined their allegations as to the conduct of FBH, USHI or

USHD and Individual Defendants without attributing specific conduct to each entity or

individual. (Doc. 31, Parties, ¶ 21 BATES 0030; Factual Background (Doc. 31, ¶¶ 37, 40-41, 43,

47-51, 54, 57, 59, 68, 75, 81-82 BATES 0032-0039); Count I, ¶¶ 84-104 BATES 0039-0040).

Plaintiffs generalized allegations include that Otabil was at all relevant times "acting in the

course and scope of his authority consistent with his employment with the Defendants, FBH and

UHS", was acting to further their interests "by attempting to manage the care and actions of

B.C.", "was engaged in the kind and nature of work" that FBH and UHS engaged him to

perform, "namely a staff member managing the care of B.C.", and "Otabil's actions took place

within the time and space" where authorized to be performed, "at FBH's facility." (¶¶ 69-72

BATES 0037-0038). Further, the use of force by Otabil allegedly was "not unexpected" by FBH

and UHS (¶ 73 BATES 0038), and they "have been repeatedly cited and dues for insufficient

training and various incidents of abuse" (¶74; *see also* ¶¶ 76-82 BATES 0038-0039).

Plaintiffs do not clearly articulate their theories of negligence against FBH, UHSI or

USHD in Count I and have failed to produce any evidence or expert testimony supporting their

claims against each Defendant. To the extent they intend to assert any claim for corporate

negligence, the "corporate negligence doctrine" is predicated upon a healthcare facility's direct

(as opposed to vicarious) liability "for its own negligent acts." *Welsh v. Bulger*, 698 A.2d 581,

585 (Pa. 1997). [Plaintiffs inability to succeed on a theory of vicarious liability for Otabil's

actions against FBH, USHI or USHD is addressed in a separate section below]. "[C]orporate

negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard

of care owed to the patient, which is to ensure the patient's safety and well-being while at the

16

hospital." *Thompson v. Nason Hosp.*, 591 A.2d 703, 707 (Pa. 1991). A plaintiff must establish that "the hospital or qualifying medical provider (1) deviated from the standard of care; (2) had actual or constructive notice of the defects or procedures that created the harm; and (3) their act or omission was a substantial factor in bringing about the harm." *Durnell v. Foti*, No. 19-2972, 2019 WL 5893263, at *5 (E.D. Pa. Nov. 12, 2019), citing *Kennedy v. Butler Mem'l Hosp.*, 901 A.2d 1042, 1045 (Pa. Super. 2006). The plaintiff must produce expert testimony for a corporate negligence claim to establish a deviation from an accepted standard of care. *Welsh*, 698 A.2d at 585.

Plaintiffs have not produced expert evidence as to the standard of care or a deviation from same by FBH, USHI and/or USHD. Also, there is also no evidence which could support a finding that these Defendants were negligent (much less grossly negligent), "had actual or constructive knowledge of the defect or procedures which created the harm" or that any alleged acts or omissions were a "substantial factor" in bringing about B.C.'s (or Plaintiffs') harm. *See Thompson*, 591 A.2d 708 (internal citations omitted).

Discovery is concluded, and there are no genuine issues of material fact precluding summary judgment as to the claim of negligence or corporate negligence. The evidence adduced was that prior to his employment, Mr. Otabil cleared all background checks including that of child abuse. *See* Bernard Otabil Employment File at Otabil AT BATES 1517-1524; 1531-1537.

Upon hire, Bernard Otabil would have received 40 hours of training. *See* Donna Newton-Putignano at BATES 0840-0841. All new hires, including mental health technicians, receive eight hours of training in verbal de-escalation and eighth hours of handle with care training all of

which Bernard Otabil would have competed successfully. *See* Bernard Otabil's Employment File BATES 1516-1656 and Mr. Otabil's deposition transcript at BATES 1692, 1755.

All Defendants, including Mr. Otabil testified that the mental health technicians are never trained to push, drag, hit or aggressively grab a resident by the arm. *See* Mr. Otabil's deposition transcript at BATES 1719, 1757; *See also* Amy Dollinger's deposition transcript at BATES 1251; *see also* Gina Fusco's deposition transcript at BATES 0562-0563.

With respect to notice on the part of any of the defendants, FBH was only made aware of the actions of Bernard Otabil, on January 15, 2019, in reference to his actions on January 9 via contact from the Central Bucks Regional Police Department and Bucks County Children and Youth in reference to an investigation into the actions of Bernard Otabil. *See* Amy Dollinger Deposition Transcript at BATES 1262-1266, and 1331-1332.

In addition, Bernard Otabil confirmed during his deposition that he has never abused any other patient at Foundation and has never pushed or shoved any of the patients at FBH. *See* Bernard Otabil's deposition testimony at BATES 1754. According to the police report and the employees interviewed, none of the employees present on the Unit on January 9, 2019 saw Bernard strike B.C. or be rough or violent with him. None of his co-workers interviewed ever witnessed Bernard Otabil assault or be violent towards ant of the residents. In fact, co-workers stated that they had never seen Mr. Otabil lose his temper with any of the residents. *See* Police Incident report at BATES 1782.

According to Ms. Bachman, she never heard of any complaints regarding Bernard Otabil's behavior with patients at FBH and, to the contrary, had heard that many patients liked Bernard Otabil. *See* Ms. Bachman's deposition transcript at BATES 1130.

18

Plaintiffs cannot establish a corporate negligence claim on this record against ANY of the Defendants.

Even if, *arguendo*, Plaintiff produced sufficient evidence to support a claim for corporate negligence against UHSI or UHSD, which is expressly denied, mere satisfaction of the factors for corporate negligence for an alleged lack of care for the patient while residing as an in-patient in its facility, is not equated with gross negligence by Pennsylvania courts. *See Potts v. Step By Step, Inc.*, 26 A.3d 1115, 1120 (Pa. Super. 2011). Expert testimony that the *Thompson* factors for corporate negligence were met, is insufficient to establish gross negligence. *See Potts*, 26 A.3d at 1120 (noting that *Thompson* "did not consider the difference between negligence and gross negligence" and "instead...only needed to determine if material facts existed such that the hospital could be found negligent.") Most pertinently, there is no evidence from which a jury could find gross negligence on the part of FBH or UHSI or USHD. As there is no evidence that FBH, USHI or USHD were grossly negligent, they are immune from liability under the MHPA, 50 P.S. § 7114. FBH, USHI and USHD are entitled to summary judgment in their favor as to Count I and Count I must be dismissed from Plaintiff's Amended Complaint, with prejudice.

> 2.   Defendants, FBH, USHI and USHD are entitled to summary judgment as to Count IV, Breach of Fiduciary Duty

FBH, USHI or USHD are entitled to summary judgment as to Count IV, ¶¶ 142-146 BATES 0052 as Plaintiffs cannot establish a claim for breach of fiduciary duty on this record, and also, as there is no evidence of negligence, much less the gross negligence or willful misconduct necessary to defeat their immunity from liability under the MHPA.

Plaintiffs pled in their Amended Complaint that "a fiduciary relationship existed between Defendants, including its employees, agents, and officers, and B.C., in that B.C. reposed a special confidence in Defendants to the extent that B.C. and Defendants did not deal with each

other on equal terms, due to B.C.'s disabilities, as well as his dependence and justifiable trust on

Defendants and their personnel," and that Defendants breached that duty. (Doc. 31, ¶143 BATES

0052). No *prima facie* claim can be established here. To succeed on breach of fiduciary duty

claim, "a plaintiff must prove the following elements: '(1) that the defendant negligently or

intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for

which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's

failure to act solely for the plaintiff's benefit was a real factor in bring about plaintiff's

injuries[.]'" *McDermott*, 11 F.Supp.2d at 626, n. 18 (internal marks and citation omitted). To

recover damages for an alleged breach, a plaintiff must demonstrate an economic loss which can

be measured with certainty. *See Paves v. Corson*, 801 A.2d 546, 550 (Pa. 2002). The plaintiff

bears the burden of establishing the existence of a fiduciary relationship. *eToll, Inc. v.

Elias/Savion Advertising, Inc.*, 811 A.2d 10, 22 (Pa. Super. 2002). Under Pennsylvania law "[a

fiduciary] relationship exists where one person has reposed a special confidence in another to the

extent that the parties do not deal with each other on equal terms, either because of an

overmastering dominance on one side or weakness, dependence or justifiable trust, on the other."

*McDermott v. Party City Corp.*, 11 F.Supp.2d 612, 626 (E.D. Pa. 1998)(quoting *Commonwealth

Dept. of Transp. v. E–Z Parks, Inc.* 153 Pa.Cmwlth. 258, 620 A.2d 712, 717 (1993)). Fiduciary

duties have been recognized in limited circumstances of special relationships involving

confidentiality or unique trust and reliance, such as certain pre-existing doctor-patient

relationships, or an attorney and client. *See eToll*, 811 A.2d at 22-23; *Weiley v. Albert Einstein

Med. Ctr.*, 51 A.3d 202, 218 (Pa. Super. 2012).

      Here, no evidence was produced during discovery supporting a special relationship, or

any relationship, between B.C. and UHSI or UHSD, involving a special "confidence" or trust, or

the provision of medical care that could establish a fiduciary duty of care. Plaintiffs also have not pled facts to show, nor produced any evidence, documentary and/or testamentary, to establish a fiduciary relationship with FBH, even if this were to qualify under Pennsylvania law. The record is simply devoid of evidence that FBH, USHI and/or USHD negligently or intentionally failed to act in good faith as to their purported fiduciary duties or otherwise. Without any evidence as to the purported fiduciary duties of FBH, UHSI, and UHSD, Plaintiffs cannot prove their claims for breach of fiduciary duty. *See McDermott*, 11 F.Supp.2d at 626. Nor could a jury find causation based on the evidence here, i.e., that the alleged breach of a fiduciary duty to B.C. "was a real factor" in bringing about Plaintiffs' alleged harm. *Id.*

Finally, there is no evidence, documentary, testamentary, or otherwise, that FBH, USHI or USHD breached a fiduciary duty and, as such, are entitled to summary judgment as a matter of law as to Count IV.

**3.    Defendants, FBH, USHI and UHSD are entitled to summary judgment as to Count V, Negligent Infliction of Emotional Distress**

FBH, USHI or USHD are also entitled to summary judgment as to Count V, ¶¶148-149 BATES 0053, because there is no evidence of negligence, much less gross negligence (or willful misconduct) supporting a claim for negligent infliction of emotion distress (NEID). As the factual record is devoid of supporting evidence, FBH, USHI or USHD are entitled to immunity under the MHPA. Moving Defendants also incorporate their arguments, *infra*, that Plaintiffs cannot establish their claims against UHSI and UHSD.

Plaintiffs allege that Defendants owed and breached "a pre-existing duty of care through having a fiduciary relationship with [B.C.]", that Defendants' "violations" resulted in B.C. being "abused and injured", thus "causing B.C. significant emotional distress, which has manifested itself in physical and psychiatric injuries, including an exacerbation of Post-Traumatic Stress

21

Disorder." (Doc. 31, ¶¶148-149; BATES 0053). Pennsylvania courts have recognized claims for NIED where a plaintiff shows: "(1) the defendant 'had a contractual or fiduciary duty toward him,' (2) the plaintiff 'suffered a physical impact,' (3) the plaintiff 'was in a 'zone of danger' and at risk of an immediate physical injury,' or (4) the plaintiff 'had a contemporaneous perception of tortious injury to a close relative.'" *Kovalev v. Walmart Inc.*, CV 22-1217, 2022 WL 16536230, at \*5 (E.D. Pa. Oct. 28, 2022)(quoting *Doe v. Phila. Cmty. Health Alts. Aids Task Force*, 745 A.2d 25, 27 (Pa. Super.. 2000), *aff'd*, 564 Pa. 264, 767 A.2d 548 (Pa. 2001); *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 459 (E.D. Pa. 2014).

Plaintiffs' NIED claim on behalf of B.C. fails because there is no evidence to establish an underlying negligence cause of action against USHI or USHD, thus the NIED claim fails as a matter of law, because it is based upon the same alleged facts. *See Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 197 (Pa. Super. 2008) (recovery for NIED requires a plaintiff to "establish the elements of a negligence claim"), *aff'd by equally divided court*, 36 A.3d 83 (Pa. 2011). "[A]bsent a finding of negligence, the negligent infliction of emotional distress claim cannot survive." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. 2000).

Also, Plaintiffs allege that FBH, USHI or USHD breached "a pre-existing duty of care through having a fiduciary relationship with [B.C.]." To the extent the NIED claim is based upon a breach of a fiduciary duty, such claims are recognized under only limited circumstances. As set forth in the previous section, no underlying fiduciary duty can be established under the factual record, which is devoid of any supporting evidence, documentary, testamentary or otherwise, and most certainly not as to UHSI and UHSD.

Finally, there is no evidence that FBH, USHI or USHD were grossly negligent or engaged in willful misconduct. Accordingly, FBH, USHI, and USHD are entitled to immunity under the MHPA and Count V must be dismissed, with prejudice.

II.     **DEFENDANTS UNIVERSAL HEALTH SERVICES, INC. AND UHS OF DELAWARE, INC. ARE ENTITLED TO SUMMARY JUDGMENT AS TO ALL CLAIMS BECAUSE THERE IS NO EVIDENCE TO SUPPORT PIERCING THE CORPORATE VEIL**

   A.     **UHSI and UHSD are not liable for any conduct on behalf of the facility, FBH .**

As set forth above, Plaintiffs have failed to produce any evidence to support any of its claims against USHI and USHD. Furthermore, there is absolutely no evidence to support disregarding corporate formalities.

"[A] parent corporation...is not liable for the acts of its subsidiaries.'" *Conquest v. WMC Mortgage Corp.*, 247 F. Supp. 3d 618, 633 (E.D. Pa. 2017) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). The "[m]ere ownership of a subsidiary does not justify the imposition of liability on a parent." *Id.* (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001)); *Bestfoods*, 524 U.S. at 61-62 (stating "the exercise of 'control' which stock ownership gives to the stockholders...will not create liability beyond the assets of the subsidiary.") Absent grounds to pierce the corporate veil, which do not exist here, a parent company may only be liable for its own conduct in operating a facility, as distinguished from mere oversight or control of a subsidiary that operates the facility or business. *See id.* at 71-72.2.

Here, Plaintiffs did not plead, and there is no evidence attributing any alleged conduct to UHSI or UHSD. Plaintiffs failed to produce any evidence to support their conclusory allegations against UHSI and UHSD - to the extent those allegations can be discerned from Plaintiffs' boilerplate collective allegations against "UHS" and "FBH in Plaintiffs' Amended Complaint.

Plaintiffs did not conduct any discovery regarding the corporate relationships between any of the named Defendants. As a matter of law, corporate parents cannot be "liable for the actions of a subsidiary organization simply due to the fact that the organizations are related." *Ismail v. Dominion Energy, Inc.*, Civ. A. No. 19-1093, 2022 WL 990843, at *6 (E.D. Pa. Apr. 1, 2022) (citations omitted).

> **B.**   **Plaintiffs fail to allege that the corporate veil should be pierced, nor does the evidence support such a claim**

"[A] corporation is an entity distinct from its shareholders even if the stock is held entirely by one person." *Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc.*, 360 A.2d 200, 207 (Pa. 1976). *Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1213 (Del. 2021). "[T]here is a strong presumption" against piercing the corporate veil. *Lumax Indus. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). Courts will only disregard the corporate entity "in limited circumstances when used to defeat public convenience, justify wrong, protect fraud or defend crime." *Kiehl v. Action Mfg. Co.*, 535 A.2d 571, 574 (Pa. 1987)(citations omitted). Delaware requires fraud or injustice "in the defendants' use of the corporate form" itself. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530-531 (D. Del. 2008); *see also MicroStrategy Inc. v. Acacia Research Corp.*, No. Civ. A. 5735-VCP, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010)(listing factors considered under Delaware law).[4] Plaintiffs do not allege, and there has been no evidence produced during discovery, showing "fraud or injustice" that would justify piercing the corporate veil in this case. Similarly, there is no evidence that would satisfy the corporate veil piercing

---

[4] There is no basis to disregard the corporate form under Pennsylvania law, or under Delaware law, which should be applied to any potential veil-piercing theory since UHSI and UHSD are Delaware corporations. *See DelphX Corp. v. Fondren*, 600 F. Supp. 3d 540, n. 44 (E.D. Pa. 2022)(describing application of Delaware law pursuant to the "internal affairs doctrine.") This choice of law would not change the result here, given Plaintiffs' inability to establish that the corporate veil should be pierced. In fact, Plaintiffs do not even plead a claim to pierce the corporate veil. *See Lumax, 669 A.2d at 895* (piercing of veil cannot proceed on conclusory allegations); *Patroski v. Ridge*, No. 2:11-cv-1065, 2011 WL 4955274, at *3 (W.D. Pa. Oct. 18, 2011)(piercing of veil must be pled).

factors under Pennsylvania law, such as "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and the use of the corporate form to perpetrate a fraud." *Lumax Indus.*, 669 A.2d at 895. Disregard of the corporate form cannot be supported on this record, thus there is no basis for a claim against UHSI or UHSD based upon imputed liability.

        C.     **Plaintiffs Have Failed to Produce any Evidence of Direct or Vicarious Liability.**

Absent a basis to pierce the corporate veil, any cause of action for negligence must be premised on UHSI's and UHSD's *own* duties, actions, and conduct. However, Plaintiffs do not plead, nor was there any written discovery, evidence, or testimony produced in discovery to support a negligence claim based on direct or vicarious liability against UHSI or UHSD (or supporting *any* liability of these entities).

In Count I, Plaintiffs interchangeably refer to all defendants and have adduced no evidence distinguishing between the various named entities (and individuals), and their specific conduct, involvement, or duties and responsibilities, much less UHSI and UHSD. Plaintiffs cannot point to any evidence that could show a *prima facie* duty of care owed by UHSI or UHSD, as this Court can decide as a matter of law. *See K.H. v. Kumar*, 122 A.3d 1080, 1097 (Pa. Super. 2015), citing *Winschel v. Jain*, 925 A.2d 782, 796 (Pa.Super.2007). The "proper question" here is whether Plaintiffs offer sufficient evidence *of a relationship* as to UHSI and UHSD "to establish that duties of care exist" based upon the "individualized inquiry" required to ensure that "multiple entities are not exposed to liability for breach of the same non-delegable duties." *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 606-607 (Pa. 2012) ("*Scampone II*"). Where healthcare facilities are involved, it is only the "licensed owner and occupier" of a hospital or facility that can owe a direct duty of care to its patients, based on the

facility's "direct contractual" and treatment relationship. *See Scampone III,* 169 A.3d at 620-621. As UHS of Doylestown, LLC was the licensed operator of psychiatric hospital FBH, neither UHSI nor UHSD may be liable for any direct duty of care owed to patients of FBH, as a matter of law.

Plaintiffs also did not allege, and the evidence does not show, that UHSI or UHSD themselves had a direct relationship with B.C. that could establish any recognized legal duty of care. *Walters v. UPMC Presbyterian Shadyside,* 187 A.3d 214, 232 (Pa. 2018) ("whether the defendant owes a duty to the plaintiff arises from the relationship between those parties, not the relationships between agents of the injury who stand between or outside plaintiff and defendant"). There is no evidence or discovery that UHSI or UHSD themselves had direct involvement in operating FBH, providing care to B.C., or hiring or supervising FBH's staff, let alone negligently or were grossly negligent. *See Kester v. Zimmer Holdings, Inc.,* No. 2:10-cv-00523, 2010 WL 2696467, at *8 (W.D. Pa. June 16, 2010). Similarly there are no allegations, evident or discovery that UHSI or UHSD had any agency or employment relationship with the FBH staff or exercised any control over FBH employees, as is necessary for Plaintiffs to support a claim for vicarious liability against UHSI or UHSD. *See, e.g., Garcyznski v. Countrywide Home Loans, Inc.,* 656 F. Supp. 2d 505, 512 (E.D. Pa. 2009). Moreover, as addressed *infra,* there is no evidence that Mr. Otabil was acting within the course and scope of his employment or agency, and the record and case law show to the contrary. The other state law Counts alleged against UHSI and UHSD fail for the same reasons and as set forth in the sections addressing these claims.

Plaintiffs are also unable to establish claims against UHSI and UHSD under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count II), as there is no evidence that they are

"programs or activities," the "recipients of federal financial assistance"; or that these entities intentionally discriminated against B.C. on the basis of disability, and no factual or legal basis to impute alleged *intentional* discrimination by FBH/its staff to UHSI and UHSD, nor are they vicariously liable for the same reasons as above. *See Nathanson v. Med. Coll. of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir. 1991)(elements of claim). Nor can Plaintiffs prove a claim under Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*, (Count III). Plaintiffs lack Article III standing to seek declaratory or injunctive relief. *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 404 (M.D. Pa. 2019). No *prima facie* claim can be established, as at minimum, there is no evidence that UHSI or UHSD owns, leases, or operates FBH, the "place of public accommodation" at issue here, and they are not liable for any alleged ADA violations of their subsidiaries. *See Douris v. Dougherty*, 192 F.Supp.2d 358, 368 (E.D. Pa. 2002)(elements of ADA claim); *McMahon v. Health Mgmt. Assocs., Inc.*, No. 2:05-cv-90-FtM-99SPC, 2007 WL 9718526, at *2 (M.D. Fla. Feb. 14, 2007)(re nonliability for subsidiaries).

For all of the reasons alleged herein, UHSI, UHSD, and/or FBH are entitled to summary judgment in their favor as to all claims (Counts I-VII).

III.    **FBH, USHI AND USHD ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE "VICARIOUS" CLAIMS, FOR ASSAULT AND BATTERY (COUNT VI) AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT VII)**

FBH, USHI or USHD are also entitled to summary judgment on the state law "intentional" tort claims of Assault and Battery (Count VI) and Intentional Infliction of Emotional Distress (Count VII), which seek to establish vicarious liability for Defendant Otabil's conduct. (Doc. 31, ¶¶ 152–157, 158-163; BATES 0054-0056). Moving Defendants incorporate their arguments, *infra*, that Plaintiffs have no viable claims against UHSI and UHSD, including that the entities are not vicariously liable for Plaintiffs' alleged harm. In addition to Plaintiffs'

inability to prove vicarious liability on this record, there is no expert opinion or other evidence from which a jury could find that USHI and/or UHSD were negligent, or gross negligent, and the immunity provision of the MHPA applies.

**A.    The Defendants, FBH, USHI and USHD are entitled to summary judgment as to Count VI, Assault and Battery**

The Assault and Battery Count is merely a vicarious liability claim for Otabil's actions. In addition to other Counts where Plaintiffs seek to establish liability or vicarious liability for the conduct of Otabil, no evidence supports Plaintiffs' claim against FBH, USHI and USHD for the intentional torts of assault and battery (Count VI). (Doc. 31, ¶¶ 152–157; BATES 0054).

"The tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension." *Mills v. City of Harrisburg*, 589 F. Supp. 2d 544, 557 (M.D. Pa 2008). "Battery requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed." *Id.* Plaintiffs have not pled or adduced any evidence of assault and/or battery by FBH, UHSI or UHSD themselves, and there is no evidence that anyone other than Otabil may have engaged in conduct with the intent to place B.C. in apprehension of harmful or offensive contact or undertook any actions intended to cause harmful or offensive bodily contact. As such, Moving Defendants are entitled to summary judgment and Count VI should be dismissed, with prejudice.

**B.    The Defendants, FBH, UHSI and USHD are entitled to summary judgment as to Count VII, Intentional Infliction Of Emotional Distress**

Plaintiffs are also unable to prove a claim against FBH, USHI and/or USHD, for intentional infliction of emotional distress. The Pennsylvania Supreme Court has not explicitly recognized the tort of intentional infliction of emotional distress ["IIED"]. *Brown v. Waxford*,

3:19-CV-00839, 2022 WL 2759064, at *11 n. 125 (M.D. Pa. July 14, 2022); *Brown v. Rivello,*
4:22-CV-01155, 2022 WL 17978798, at *4 (M.D. Pa. Dec. 28, 2022); *Wilson v. American Gen.*
*Fin. Inc.,* 807 F. Supp. 2d 291, 301 (W.D. Pa. 2011)(noting Pennsylvania Supreme Court has not
recognized a cause of action for IIED, but has instructed that the potential scope of recovery "is
highly circumscribed."), citing *Kazatsky v. King David Mem'l Park, Inc.,* 527 A.2d 988, 991 (Pa.
1987)). "A claim of IIED is reserved for only the "most egregious conduct" and "requires
conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."
*Brown,* at *4 n. 41 (quoting *Hoy v. Angelone,* 720 A.2d 745, 754 (Pa. 1998))(further citations
omitted); *Fugarino v. Univ. Servs.,* 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000). Consequently,
Count VII must be dismissed on the independent ground that Plaintiffs have no cause of action
for intentional infliction of emotional distress.

 Plaintiffs also cannot establish the elements of an IIED claim, which requires that: "(1)
the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must
cause emotional distress; (4) that distress must be severe." *Hoy v. Angelone,* 691 A.2d 476, 482
(Pa. Super. 1997). Extreme and outrageous conduct is that which is "so outrageous in character,
and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized society." *Strickland v. University of Scranton,*
700 A.2d 979, 987 (Pa. Super. 1997). The Amended Complaint ¶ 160 suggests that the IIED is
based on "inflicting such cruel and unusual punishment as described herein" upon B.C., and as
no "cruel and unusual punishment" is ascribed other than the Otabil's alleged abuse, the IIED
claim is purely vicarious. Finally, there is no evidence produced whatsoever, including expert
testimony against FBH, USHI and/or USHD to prove a claim for IIED.

C.   Plaintiffs cannot establish a claim against the Defendants for vicarious liability for Otabil's conduct

Plaintiffs cannot prove vicarious liability based upon their allegations that Otabil acted within the scope and authority of his employment. His acts were criminal in nature and, therefore, outside the scope of his employment. Therefore, Moving Defendants can not be held vicariously liable for Mr. Otabil's actions.

"A master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment." *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. 1979). "[A] plaintiff's conduct is within the scope of employment if the employee's conduct: '(1) is of a kind and nature that he is employed to perform; (2) occurs substantially within the authorized time and space limits designated by his employer; (3) is driven by a desire to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.'" *Nelson v. Loftus*, CV 17-3247, 2019 WL 175127, at *2 (E.D. Pa. Jan. 11, 2019) (quoting *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. 1998)), citing Restatement (Second) of Agency § 228.

An employee "is impliedly authorized to use all reasonable means incident to the performance of his employment", and an employee who, "within the scope of his employment..., uses unreasonable means," may remain within the scope of employment. *Lunn v. Boyd*, 169 A.2d 103, 104-105 (Pa. 1961)(evidence insufficient to submit issue of whether driver's assault was within scope of employment to jury). However, where "the employee commits an act encompassing the use of force so excessive and dangerous, as to be totally without responsibility or reason under the circumstances, the employer is not liable as a matter of law." *Id.*

Further, "[t]he fact that the act was done in an outrageous manner is indicative that the employee is not actuated by any intent of performing the business of his employer, but rather,

30

that it is done solely through his own private malice." *Lunn*, 169 A.2d at 105, citing *Potter Title & Trust Co. v. Knox*, 113 A.2d 549, 53 (Pa. 1955) & A.L.R. 2d 709 Restatement of Agency, §§ 229, 231 & 235; *McMaster v. Reale*, 110 A.2d 831, 832 (Pa. Super. 1955) ("a master is not liable for the willful misconduct of his servant, and that such willful misconduct, while it may be within the course of the employment, is not within the scope thereof"); *Potter Title*, 113 A.2d at 551 (acts committed by employee in outrageous or whimsical manner are not within scope of employment); *Lockhoff v. Slonaker*, 2017 WL 2423790, at *16 (E.D. Pa. Jun. 5, 2017) (Beetlestone, J.) (holding that "[b]ecause knowingly submitting false allegations to a prosecutor would not serve the interests of the Pennsylvania State Police or be otherwise justified by a legitimate penological purpose, such activity falls outside a Trooper's scope of employment"); *Sarin v. Magee*, 333 F. Supp. 3d 475, 483 n. 5 (E.D. Pa. 2018)(declining to adopt expansive understanding of "scope of employment" to encompass unauthorized or consciously criminal or tortious conduct, absent clear indication from state's highest court).

First, there is no evidence from which a jury could find that that Otabil's assault of B.C. is of a kind and nature of the work he is employed to perform, fell within his general scope of employment and authority, or was authorized by FBH, USHI and/or USHD. The fact that Otabil's employment duties included the care of B.C. cannot show that he was acting within his employment when he allegedly "yelled at", "shove[d]", "drag[ged], struck or "push[ed]" B.C., and the record is to the contrary. Even if it can be inferred that some force is occasionally necessary in a facility like FBH in treating the type of individuals like B.C., scope of employment *is far exceeded where the use of force is so excessive and dangerous, as to be totally* without responsibility or reason under the circumstances. As Plaintiffs allege, Otabil was *criminally convicted* for his actions, and their own description of Otabil's acts shows that his use

of force against B.C. was so outrageous, excessive and dangerous, thus of the type for which

corporate defendants are *not* vicariously liable:

> Video surveillance from FBH's camera system on January 9, 2019
> shows Defendant, Otabil continuously abusing B.C. for a period of
> approximately thirty (30) minutes as Otabil yells at, pushes,
> shoves, drags and strikes B.C. repeatedly in the course of stripping
> and showering B.C.

(Doc. 31, ¶¶ 51, 55; *see also* ¶¶ 45–47 (alleging Otabil "was to provide care, comfort and

treatment to B.C.," but instead "violently" "pushed B.C. to the floor multiple times and struck

him multiple times," engaged in conduct including "pushing, shoving, striking, and otherwise

abusing B.C.," causing "blunt force trauma to the abdominal cavity"); ¶ 157 (alleging Otabil's

conduct was "so outrageous as to be intolerable in a civil society")).  Even Otabil himself

acknowledged in his testimony that his conduct was not consistent with his training and that his

criminal conduct was clearly not part of his duties at FBH.  *See* Bernard Otabil's deposition

testimony at BATES 1692, 1755, 1719, 1757.

Plaintiffs also cannot show that Otabil's conduct abusing B.C. was driven by a desire by

Otabil to serve his employer, and Pennsylvania law does not require Defendants to prove

Otabil's abusive acts were motivated by personal ill-will toward B.C. *See Lunn,* 169 A.2d at

104-105.  Rather, it is the "outrageous manner" of Otabil's actions themselves that indicate that

he was not actuated by any intent of performing his employer's business and his acts were done

solely through his own private malice.  *Lunn,* 169 A.2d at 105.  Under no circumstances can it be

found that Otabil's *criminal* conduct intended to further the interests of FBH.

Second, there are no facts showing that Defendants knew or should have known that

Otabil possessed dangerous attributes which could foreseeably create a risk of harm to patients

such as B.C., or that Otabil's use of force was "not unexpected by the employer." *Nelson,* at *2

(*see also, e.g.,* Doc. 31, (¶ 73; BATES 0038); that FBH, USHI or USHD "have been repeatedly

cited and sued for insufficient training and various incidents of abuse" (¶¶ 73-74; BATES 0038); and reference to a prior incident involving "Ryan M." (¶¶ 76-82; BATES 0038)). No reasonable jury could find that FBH, USHI or USHD knew or foresaw that Otabil would abuse B.C., and they cannot be held vicariously liable for Otabil's actions, for "entrusting" B.C. to Otabil's care, or for any failure to terminate Otabil.[5]

Further, no expert opinion or other evidence was adduced from which a jury could find FBH, USHI or USHD to be negligent, grossly negligent or to have engaged in willful misconduct, thus they are immune from liability pursuant to the MHPA. FBH, USHI or USHD are entitled to summary judgment as to Counts VI and VII of the Amended Complaint, and any claims based upon vicarious liability for Otabil's actions.

## IV.    CONCLUSION

Based on the foregoing, Defendants UHS of Doylestown, LLC d/b/a FBH, UHSD, USHI, Gina M. Fusco, Psy. D,   Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger respectfully request that this Honorable Court grant summary judgment in their favor in the form of the attached Order.

---

[5] Further, to the extent Plaintiffs allege that Defendants should have had knowledge of Bernard Otabil's alleged dangerous propensities based on the prior investigation regarding Ryan M., it is pure speculation. Notwithstanding a thorough investigation by Bucks County Children & Youth, no perpetrator was identified, much less anything to indicate that Bernard Otabil was the perpetrator and, therefore, Defendants would have knowledge. The prior independent investigation by Bucks County Children & Youth only revealed a result of "indicated" with no perpetrator identified. *See* Bucks County Investigation; BATES 1816. No evidence has ever been adduced, in the present matter or during the prior investigation, which would indicate the identity of the perpetrator in reference to Ryan M. or that Bernard Otabil was said perpetrator. Moreover, as a result of the investigation and circumstances involving Ryan M., no criminal charges against anyone were ever brought. Additionally, Moving Defendants had previously obtained an expert report, which stated that the injuries sustained by Ryan M. were possible absent abuse. As such, Moving Defendants could not have any notice that Bernard Otabil allegedly possessed dangerous attributes.

Respectfully submitted,

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

*Paul F. Laughlin*

By: _____

Paul F. Laughlin, Esquire
Donna M. Modestine, Esquire
pflaughlin@mdwcg.com
dmmodestine@mdwcg.com
*Counsel for Moving Defendants*

34

## Joint Appendix of Exhibit

Plaintiffs' Complaint Docket Number 1 BATES 0001-0025;

Plaintiffs' Amended Complaint Docket Number 31 BATES 0026-0059;

Defendants, Dana Bachman, Anthony Cusate, Amy Dollinger, Foundations Behavioral Health, Gina M Fusco, Wendy Monte, and Donna Newton-Putignano's Answer to Plaintiffs' Amended Complaint Docket Number 51 BATES 0060-0074;

Defendant, Universal Health Services, Inc.'s Answer to Plaintiffs' Amended Complaint Docket Number 52 BATES 0075-0086;

Defendant, UHS of Delaware, Inc.'s Answer to Plaintiffs' Amended Complaint Docket Number 53 BATES 0087-0100;

Foundations Records at FBH BATES 0101-0108;

Treatment Records of Dr. Shankar Srinivasan; Part I BATES 0109-0178;

Treatment Records of Dr. Shankar Srinivasan; Part II BATES 0179-0196;

Theresa Collin's Deposition Transcript BATES 0197-0380;

Kevin Collin's Deposition Transcript BATES 0381-0438;

Saint Claire's Hospital Medical Records BATES 0439-0463;

Deposition Transcript of Gina M Fusco BATES 0464-0608;

Deposition Transcript of Anthony Cusate BATES 0609-0706;

Deposition Transcript of Wendy Monte BATES 0707-0819;

Deposition Transcript of Donna Newton-Putignano BATES 0820-0912;

Deposition Transcript of Dana Bachman BATES 0913-1222;

Deposition Transcript of Amy Dollinger BATES 1223-1423;

Criminal Hearing Transcript BATES 1424-1513;

Expert Report of Dr. Shankar Srinivasan BATES 1514;

Expert Report of Dara Duryea, LCSW BATES 1515;

Bernard Otabil Employment File from Foundations Behavioral Health BATES 1516-1656;

Deposition Transcript of Bernard Otabil BATES 1657-1765;

Police Report/Incident Report BATES 1766-1787;

Doylestown Hospital Records BATES 1788-1803;

Portions of Children's Hospital of Philadelphia Medical Records 0001; 0006-0008 BATES 1804-1807;

Consult Note of Dr. Brian Brennan from CHOP BATES 1808-1815;

Finding of Indicated Abuse of R.M BATES 1816;

Video Clip of Interaction with B.C. and Bernard Otabil at Foundations.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Motion for Summary Judgment was electronically filed with the Court on **August 2, 2023**, and is available for viewing and downloading from the ECF System.  The following counsel of record were served via electronic notification:

Edwin A. Abrahamsen, Jr., Esquire
Abrahamsen, Conaboy & Abrahamsen, P.C.
1006 Pittston Avenue
Scranton, PA  18505
*Attorneys for Plaintiffs*

John S. Benson, Esquire
Penglase & Benson, Inc.
18 N. Main Street
Doylestown, PA 18901
*Attorneys for Defendant Bernard Otabil*

MARSHALL DENNEHEY WARNER
COLEMAN AND GOGGIN

BY: *Paul F. Laughlin*
Paul F. Laughlin, Esquire
pflaughlin@mdwcg.com
Donna M. Modestine, Esquire
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
610-354-8283
dmmodestine@mdwcg.com
*Counsel for Defendants UHS of Doylestown, LLC d/b/a Foundations Behavioral Health, UHS of Delaware, Inc., Universal Health Services, Inc., Gina M. Fusco, Psy. D, Jon Lyford, Anthony Cusate, Wendy Monte, Dana Bachman, Donna Newton-Putignano, and Amy Dollinger*

Date:  August 2, 2023